LAWSON, ADMR., APPELLANT, v. ATWOOD ET AL., APPELLEES.

[Cite as Lawson v. Atwood (1989), 42 Ohio St. 3d 69.]

(No. 88-156—Submitted February 14, 1989—Decided April 19, 1989.)

*Lamkin, Van Eman & Trimble* and *Tim Van Eman,* for appellant.

*Morrow, Gordon & Byrd* and *Steven T. Greene,* for appellees.

H. BROWN, J. The case before us presents the narrow question of whether appellant is the "parent of the decedent" for purposes of Ohio's Wrongful Death Act. For the reasons that follow, we answer the question affirmatively and reverse the decision of the court of appeals.

R.C. 2125.01 *et seq.* provides a cause of action to certain designated parties for the death of a person which is caused by the "* * * wrongful act, neglect, or default [of another] which would have entitled the party injured to maintain an action and recover damages if death had not ensued * * *." R.C. 2125.01. R.C. 2125.02 states in relevant part:

"(A)(1) An action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent."

R.C. 2125.02 is a remedial law and so must be construed to promote the objectives of the Act and to assist the parties in obtaining justice. See *French* v. *Dwiggins* (1984), 9 Ohio St. 3d 32, 9 OBR 123, 458 N.E. 2d 827; R.C. 1.11. The objectives of wrongful death Acts are threefold: (1) to compensate those who have been deprived of a relationship, (2) to ensure that tortfeasors bear the cost of wrongful acts, and (3) to deter harmful conduct which may result in death. *O'Grady* v. *Brown* (Mo. 1983), 654 S.W. 2d 904, 908. See, also, Davis, Wrongful Death, 1973 Wash. U.L.Q. 327, 331-336; *Jones* v. *Wittenberg Univ.* (C.A. 6, 1976), 534 F. 2d 1203. With these goals in mind, we turn to the facts before us.

This is an appeal from a summary judgment. Accordingly, the trial court was required to examine the evidence in a light most favorable to appellant. *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150, 66 O.O. 2d 311, 309 N.E. 2d 924.

Appellant claims that he fits within the statutorily designated class of persons who are rebuttably presumed to have suffered damages by reason of the wrongful death of Gina Marie Lawson. Gina was born March 18, 1965 in Columbus to seventeen-year-old Cheryl Lynn DiVito. Gina's father was, and is, unknown. In late 1966 and continuing until early 1967, appellant and his wife, Marie L. Lawson, began babysitting without compensation for the infant Gina on a regular basis. The amount of time that the infant was with the Lawsons gradually increased from a day or two per week to three

and four weeks consecutively. Then appellant discovered that a boyfriend of the natural mother had beaten the child. The mother asked appellant to take Gina and keep her, whereupon appellant asked permission to adopt Gina. The mother agreed, and on June 15, 1969 she signed a consent to adoption which was notarized by attorney James H. Donovan II. Afterward, Gina's natural mother severed all ties to the child: she never again saw, spoke to, or contacted Gina.

After receiving the mother's disclaimer, appellant instructed his attorney to begin adoption proceedings. However, appellant did not complete the process.

In 1970 appellant moved to Licking County. He again contacted his attorney, with the purpose to formally adopt Gina. On September 15, 1970, attorney Donovan wrote a letter to Judge Donald R. Hanna of the Licking County Probate Court. The letter stated that the Lawsons were moving to Licking County from Franklin County and that the Franklin County court had a policy of not approving adoptions when the natural mother is aware of the child's placement. The letter asked Judge Hanna for comments regarding such an impediment to an adoption proceeding in Licking County. The court's response is unknown. Appellant did not proceed with a formal adoption process. On March 3, 1978, attorney Donovan wrote a letter to Judge Virginia Weiss of the Licking County Probate Court, posing the same questions previously addressed to Judge Hanna. The response, if any, of Judge Weiss is not in the record. It is undisputed that appellant did not formally adopt Gina.

In 1979, appellant and his wife were divorced. Appellant's wife was given legal custody of Gina (then age fourteen). However, Gina, and the other four children of the Lawsons' marriage, continued to reside almost continuously with appellant. Appellant became concerned about the quality of care provided to the children on the occasions when they stayed with their mother. He requested a change in custody. As a result, the court entered an order, granting legal custody of Gina (and the other children) to appellant.

School records from 1970 through 1983 indicate that the decedent was known as Gina Marie Lawson. Gina used the Lawson name in school and everyone assumed that Gina was appellant's child. Appellant was listed as Gina's father on Gina's school records.

The evidence is undisputed that Gina, from age two until her death sixteen years later, lived with appellant and that he loved and treated her as if she were his natural child. He received Gina's society, companionship and filial obedience. He represented Gina to the world as his child and he received the benefits of her love and affection as though he were her natural father. Gina performed services in the home and was treated the same as appellant's other children. From the time that Gina first entered appellant's home at the age of two until she died at age eighteen, appellant was Gina's sole means of support and guidance.

We have been invited by the appellant to endorse a doctrine of "equitable adoption" in order to reverse the decision by the court of appeals. We recognize that the indiscriminate application of such a broad legal principle is not desirable. Nor is such a doctrine generally supported in other jurisdictions.[1] Ordinarily where an adult seeks to be recognized as the

---

[1] See Annotation, Modern Status of Law as to Equitable Adoption or Adoption by Estoppel (1980), 97 A.L.R. 3d 347-400, and cases cited therein.

parent of a child who is not the person's natural offspring, formal adoption is the only method by which the relation of parent and child can be established. Here, however, the child is deceased and the option of formal adoption is no longer available. Further, we are presented with a claim under the wrongful death statutes. This is a dispute between the tortfeasor and one who has exercised all the indicia of parenthood as to Gina. It is not a dispute between parties competing for custody or the privileges and obligations of parenthood with respect to Gina. The distinction is significant. Having made the distinction, we note that there is a dearth of authority to guide our application of the Ohio Wrongful Death Act to the facts of this case.

The express purpose of the wrongful death statutes is to permit a recovery from a tortfeasor for the loss occasioned by wrongful death. When we view the language of the statute in the context of its purpose and apply the statute to the facts before us, we find that Dennis Lawson is and has been the parent of Gina Lawson. In reaching this result, we recognize the danger presented by claims of those who have not established a parental relationship by clear and convincing evidence. Accordingly, we set a narrow standard to be applied in determining who is a parent for this limited purpose.

Accordingly, we hold that where, under the Ohio wrongful death statutes, one who is neither a natural nor an adoptive parent seeks to recover from a tortfeasor, such a claim will lie only where the following four tests are met by clear and convincing evidence:

(1) The natural parents of the child have disclaimed or abandoned parental rights to the child;

(2) The one claiming to be parent has performed the obligations of parenthood for a substantial period of time;

(3) The child and the one claiming to be parent have held themselves out to be parent and child for a substantial period of time; and

(4) The relationship between the child and the one claiming to be parent has been publicly recognized.

Applying this test to the facts before us, we find that the only known, or knowable, natural parent of Gina has disclaimed her status as parent. Further, the appellant performed the obligations and enjoyed the rights of parenthood for a continuous period of sixteen years. Gina has been held out as the child of appellant and the parent-child relationship has been recognized, not only in the public schools where Gina attended, but also in the court of law which awarded custody of Gina to appellant.[2]

We find that the appellant is the parent of Gina Lawson for the purpose of bringing a wrongful death action arising out of Gina's death. The decision of the court of appeals is reversed and the cause is remanded to the court of common pleas for further proceedings in accordance with this opinion.

*Judgment reversed
and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

---

[2] Though the formal order of custody is not a part of the record, the fact that such an award was made is before us. Such an order would not have been made, in this instance, without recognition by the court having jurisdiction thereof that appellant was a parent of Gina. R.C. 3109.04.