WERNER, Admr., et al., Appellees,

v.

CINCINNATI INSURANCE COMPANY, Appellant.

[Cite as *Werner v. Cincinnati Ins. Co.* (1991), 77 Ohio App.3d 232.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–1017.

Decided Sept. 17, 1991.

_____

*Wolske & Blue* and *Michael S. Miller*, for appellees.

*Lane, Alton & Horst* and *Karen K. Rosenberg*, for appellant.

_____

ROBERT J. BROWN, Judge.

Appellees, John Werner, Jr., et al., filed a complaint for declaratory judgment in the Franklin County Court of Common Pleas requesting the court to issue declarations addressing the application of the terms of their insurance policy with appellant, Cincinnati Insurance Company, to their various claims which arose from a car accident which had resulted in the death of an insured under the policy. Pertinent to this appeal is the requested declaration that the court declare that the per person limit of the uninsured motorist coverage in the policy which appellant had issued to appellees applied separately to each of the claims of the appellees pursuant to *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089. Appellees also requested that the court declare all of the appellees to be "insured" within the meaning of the uninsured motorist coverage policy.

In an April 10, 1990 decision, the common pleas court noted that there were no determinative disputed facts in the case and that the two issues presented revolved upon language of the policy. The court determined that all of the appellees were "insured" within the meaning of the policy and that the policy clearly limited payment for all damages and bodily injury to any one person to $100,000 pursuant to *Cincinnati Ins. Co. v. Phillips* (1989), 44 Ohio St.3d 163, 541 N.E.2d 1050. However, the court granted a motion to reconsider the case and issued a second decision on June 7, 1990, in which, based upon the authority of *Wood, supra* the court concluded that appellees were entitled to the per occurrence limit of $300,000.

Appellant appeals this decision and raises the following two assignments of error:

"I. The trial court erred by determining that eight (8) of the plaintiffs-appellees are 'insured persons' within the meaning of the automobile insurance policy issued by defendant-appellant to two (2) of the plaintiffs-appellees; and that those eight (8) plaintiffs-appellees are thereby afforded uninsured motorists coverage for damages resulting from the death of their decedent.

"II. The trial court erred by determining that each of the insured plaintiffs-appellees is afforded uninsured motorists coverage up to the $100,000 'each person' limit of liability, subject to the $300,000 'each accident' limit of liability set forth in the automobile insurance policy."

Peter J. Werner was killed in an automobile accident on February 19, 1988. At the time of the accident he was driving westbound on West Fifth Avenue in an automobile owned by the Werner Company when an uninsured motorist driving eastbound on West Fifth Avenue and who was negligently and recklessly operating his motor vehicle hit him. At the time of the accident Peter Werner was living with his parents. Peter Werner was survived by his parents, John and Beulah Werner, and by seven siblings. Peter Werner was driving a car which was insured under a comprehensive liability policy which his family had.

It is not disputed that Peter Werner was an insured under the applicable policy language. The two disputes concern whether his siblings were insured under the policy for the purposes of collecting for his wrongful death and, two, which limit of liability applies, the per person limit or the per occurrence limit.

In its first assignment of error appellant asserts that the trial court incorrectly determined that the siblings of the decedent were "insured" within the meaning of the policy provisions.

The language of the insurance policy provides that " **'Insured'** means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. \* \* \* " (Policy at 2.) The policy sets out "who is insured" as the following:

"D. **WHO IS INSURED**

"1. **You** or any **family member.**

"2. Anyone else **occupying** a covered **auto** or temporary substitute for a covered **auto.** The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

"3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured.**"

Appellees argued that because the wrongful death statute entitled them to recover for the decedent's death they were insured for the purposes of this

policy pursuant to paragraph three of "who is insured." Appellant disputed this argument and argued that appellees' interpretation of paragraph D(3) completely ignored "another," which modifies insured and rendered its presence completely superfluous. Appellant contended that the very terms of this section extend only to the people who are otherwise insured and who are entitled to recover damages because of the death of another insured person.

■■■■ The trial court applied the traditional rules of contract construction and found that the appellees were insured. When there is no ambiguity in the language of a contract, it is not the court's place to interpret the words beyond their plain meaning. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 24 O.O.3d 274, 436 N.E.2d 1347; *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 540 N.E.2d 716. However, when the language is ambiguous and reasonably open to varying interpretations, the court will resolve the ambiguity most favorably for the insured. *Gomolka, supra,* 70 Ohio St.2d at 168, 24 O.O.3d at 275, 436 N.E.2d at 1348. In doing so, the court will construe the language liberally in favor of the insured and strictly against the insurer. *Id.* at 174, 24 O.O.3d at 279, 436 N.E.2d at 1352.

We agree with the trial court that the language of this policy is ambiguous and, while probably not the intention of the appellant, we affirm the trial court's finding that the siblings entitled to bring a wrongful death claim for the death of decedent are insured under this policy within its terms.

The first assignment of error is overruled.

■■■ Appellant's second assignment of error raises the following question: under the uninsured provisions of the automobile policy, what liability limit applies to the insureds' claims resulting from the insured decedent's wrongful death—the $100,000 per person limit or the $300,000 per occurrence limit? While the question is straightforward, the pertinent case law is obtuse.

For all intents and purposes, the source of the present confusion can be traced back to *Wood, supra. Wood* addressed the issue of " * * * whether the survivors of an insured decedent have one collective claim for wrongful death or whether each such survivor has a separate claim. * * * " *Id.,* 38 Ohio St.3d at 88, 526 N.E.2d at 1091. In a four-three decision, the court held that each survivor had a separate claim and that the separate claims could not be combined and limited to the single-person limit of liability in the insured's underinsured motorist provision. *Id.* The majority supported this outcome by referring to language of the wrongful death statute, R.C. 2125.02, which states that the applicable people are " * * * rebuttably presumed to have suffered damages by reason of the wrongful death * * *." The court concluded that each person presumed to have suffered damages had a

compensable claim and that to limit these claims to the per person limit was impermissible because it would "significantly frustrate" the purposes of R.C. 3937.18, the statute which mandates the provision of uninsured and underinsured motorist coverage with an automobile liability insurance policy. *Id.*, 38 Ohio St.3d at 90, 526 N.E.2d at 1093.

Writing for the dissent, Justice Holmes stated that the majority had misinterpreted the legislature's intent in enacting the wrongful death statute. Justice Holmes argued that only the decedent's personal representative had a cause of action for wrongful death and that the per person limitation of an underinsured motorist coverage policy applied to the damage claim made by the personal representative regardless of the number of statutory beneficiaries covered by the policy. *Id.*, 38 Ohio St.3d at 92, 526 N.E.2d at 1094.

After *Wood*, the Ohio Supreme Court decided several cases which reflected the continuing disagreement among the justices on the issue of whether or not an insurance policy may limit wrongful death claims to the per person limit of liability. The swing vote in this area has been Justice Brown.

Justice Brown concurred in judgment only in the three-one-three decision, *Cincinnati Ins. Co. v. Phillips* (1990), 52 Ohio St.3d 162, 556 N.E.2d 1150 ("*Cincinnati II*"). In this case, the Ohio Supreme Court reconsidered its earlier decision with the same title, *Cincinnati Ins. Co. v. Phillips* (1989), 44 Ohio St.3d 163, 541 N.E.2d 1050 ("*Cincinnati I*").

The action which the Ohio Supreme Court reconsidered in *Cincinnati II* was a declaratory action which a tortfeasor's insurance company brought requesting a determination of its liability limits to the decedent's family which had wrongful death claims. Writing for the plurality, Justice Sweeney ruled that *Wood* prohibited the insurance company from applying the per person liability limit to a survivorship and wrongful death claim. In reaching this conclusion, the court extended the application of *Wood*, which involved underinsured and uninsured coverage, to the liability coverage situation which faced the court. Thus, insurance companies could not limit liability coverage for wrongful death claims to the single person limit of liability.

In his concurrence, Justice Brown asserted that, according to the plain meaning of the policy language, the per person limit did not apply to the wrongful death claim because its limit applied to "damages *for* bodily injury" and a wrongful death claim was not a claim *for* bodily injury, rather, it was a claim *arising out of* bodily injury. Justice Brown expressly stated his belief:

" * * * (1) that wrongful death claimants do have separate claims under R.C. 2125.02(A)(1); (2) that under R.C. 3937.18 an insurance carrier may apply a single limit to separate claims arising out of a single bodily injury provided the policy limitation tracks the corresponding limitation on liability coverage;

but (3) that insurance companies have the burden of stating policy limitations clearly and unambiguously. * * * " *Cincinnati II, supra,* 52 Ohio St.3d at 167, 556 N.E.2d at 1154.

Of further interest, this court points to Justice Brown's concurrence in *Cincinnati I.* In his concurrence, Justice Brown stated that he supported modifying the syllabus law of *Wood* to the extent that it surpassed holding that each beneficiary in a wrongful death action had a separate claim. *Cincinnati I, supra,* 44 Ohio St.3d at 167, 541 N.E.2d at 1054, fn. 4.

Justice Holmes wrote for the three justice dissent in *Cincinnati II* and asserted that an insurance provision which limits coverage for all damages arising out of bodily injury, including death, sustained by one person to a single limit of liability was a valid restriction provided the limits are plain and unambiguous. *Cincinnati II, supra,* 52 Ohio St.3d at 167, 556 N.E.2d at 1154.

*State Farm Auto. Ins. Co. v. Rose* (1991), 61 Ohio St.3d 528, 575 N.E.2d 459, a four-three decision, sets forth the current position of the Ohio Supreme Court on the matter. The issue in this case was whether the language of the insurance policy was sufficiently clear and unambiguous so as to limit all derivative death claims of the decedent to the each person limit of liability. A majority of the court answered this question in the affirmative. The majority quoted approvingly from Justice Brown's concurrence in *Cincinnati II.* The majority limited the holding of *Wood* and found that it applied only to situations when " * * * the policy limitations in uninsured or underinsured motorist provisions do not track the corresponding limitation on liability coverage, and are ambiguous on their face. * * * " *Rose, supra,* at 532, 575 N.E.2d at 462.

The syllabus of *Rose* provides as follows:

"An automobile liability insurance policy may apply a single limit to separate claims arising out of a single bodily injury provided the policy limitation tracks the corresponding limitation on liability coverage, and is unambiguously stated. * * * "

Justice Brown concurred in the judgment of the majority, while the three justices who made up the plurality in *Cincinnati II* dissented.

The resolution of the second assignment of error depends upon the language of the insurance policy. The pertinent policy language in this case is the endorsement setting forth the company's uninsured motorists liability limits:

"Regardless of the number of covered **autos, insureds,** claims made or vehicles involved in the **accident, our** limit of liability is as follows:

"a. The most **we** will pay for all damages *resulting from* **bodily injury** to any one person caused by any one **accident** is the limit shown in this endorsement for 'each person'." (Emphasis added.)

In *Cincinnati II, supra,* Justice Brown wrote that a wrongful death claim was not a claim *for* bodily injuries. However, he noted that a limit for claims *arising out of* bodily injury might include a wrongful death claim. In *Rose, supra* at 530, 575 N.E.2d at 460, Justice Brown concurred in the finding that the policy limitation which used the following pertinent language: " * * * all damages * * * arising out of and due to *bodily injury* to one person * * * " was sufficiently clear and unambiguous language to apply the limit to wrongful death claims.

Because we find that "resulting from" is substantively analogous to "arising out of," we conclude that this language is sufficiently clear and unambiguous and, therefore, find that the per person limit of $100,000 applies to the wrongful death claims of the insureds. Appellant's second assignment of error is sustained.

The judgment of the trial court is sustained in part, overruled in part and remanded to the trial court for proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

McCORMAC and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired of the Tenth Appellate District, sitting and hearing the appeal pursuant to active duty prior to his retirement, and assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution, subsequent to his retirement.

ROBERT J. BROWN, J., of the Wayne County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.