**YEARLING, Admr., et al., Appellants,**

v.

**STATE FARM INSURANCE COMPANY, Appellee.**

[Cite as *Yearling v. State Farm Ins. Co.* (1992), 76 Ohio App.3d 559.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1094.

Decided April 16, 1992.

*Wolske & Blue* and *Michael S. Miller,* for appellants.

*Hamilton, Kramer, Myers & Cheek, James R. Gallagher* and *Brian Bradigan,* for appellee.

DESHLER, Judge.

Plaintiffs-appellants, Joseph H. Yearling, Jr. et al., appeal the Franklin County Court of Common Pleas' decision, which declared that the terms of insurance policies the plaintiffs had with the defendant-appellee, State Farm Insurance Company ("State Farm"), limited State Farm's obligation to pay under the underinsured motorist provisions of the policies.

The facts of this case are undisputed. On or about May 29, 1988, Scott Gillespie, then nine years old, was involved in auto accident in which he was mortally injured. Afterward, it was discovered that he qualified as an insured under two policies of insurance issued by State Farm to Thomas and Carol Gillespie. Those policies contained underinsured motorist coverage limits of $100,000/$300,000 each person/each accident.

Following the discovery of the State Farm coverage, Joseph H. Yearling, administrator of the estate of Scott Gillespie, presented the following claims to State Farm, pursuant to the underinsured motorist coverage portion of the policy: (1) a survivorship claim for conscious pain and suffering and other damages experienced by Scott Gillespie from the time of his injury to the time of his death; (2) a claim for wrongful death damages on behalf of Thomas Gillespie, as father of Scott Gillespie; (3) a wrongful death claim on behalf of Carol Gillespie, as the mother of Scott Gillespie; and (4) a wrongful death claim on behalf of Michael Gillespie, the brother of Scott Gillespie. Thereafter, State Farm paid $87,500 toward all of the above claims. The amount of $87,500 represents the $100,000 "each person" limit of underinsured motorist coverage less $12,500 paid by the tortfeasor's liability carrier. However, plaintiffs disputed that the payment of $87,500 constituted full payment of all their claims.

On June 21, 1990, a declaratory judgment action was filed for purposes of obtaining a decision by the trial court as to how many limits of coverage were available in this case of a single, wrongful death with multiple claims arising therefrom. It was plaintiffs' contention that the $300,000 "each accident" limit of liability should be available for payment of the aforementioned claims (less the $12,500 liability insurance payment) with each individual claim

subject to a maximum of $100,000, said amount being the "each person" limit of liability contained in the policy. Conversely, State Farm's position was that the $100,000 "each person" limit of liability (less the $12,500 liability insurance payment) should be the maximum amount of insurance available in this case for payment of all the claims.

On July 18, 1991, the trial court concluded that the $100,000 each person limit of coverage which had previously been paid was the maximum amount of coverage owed in this case. In reaching this conclusion, the trial court ruled that the " * * * Supreme Court line of cases now permit[s] an insurance carrier to contractually limit coverage of separate claims in underinsured cases to one injury. * * *" In addition, the trial court ruled that the policy language employed by State Farm established a limit of liability of $100,000. This appeal was then filed.

In this appeal, plaintiffs raise the following assignment of error:

"The trial court erred to the substantial prejudice of plaintiffs-appellants in ruling that each insured beneficiary of a wrongful death action does not have available a separate per person limit of uninsured motorist coverage."

By way of this assignment of error, it obvious that, once again, this court is being asked to address the issue of what limit of liability under an underinsured motorist provision of an automobile insurance policy applies to an insured's claims from an insured decedent's wrongful death. Is it a per person limit or a per accident limit? More specifically, this court is being asked to answer two questions: (1) May a policy of an insurance limit recovery of the underinsured coverage? and (2) If a policy may limit it, do the terms of the policies in the case *sub judice* limit the plaintiffs' recovery?

Most recently, this court addressed the first question in *Werner v. Cincinnati Ins. Co.* (1991), 77 Ohio App.3d 232, 601 N.E.2d 573. In *Werner*, we determined that the current position of the Ohio Supreme Court, as espoused in *State Farm Auto. Ins. Co. v. Rose* (1991), 61 Ohio St.3d 528, 575 N.E.2d 459, is that policies may limit recovery of underinsured and uninsured motorist coverage arising out of a single bodily injury to a single limit of liability so long as the policy provisions track the corresponding limitation on liability coverage and are unambiguous on their face. We found that *Rose* limited the holding of *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089, which seemingly provided a complete bar against provisions limiting uninsured and underinsured motorist coverage. Therefore, in accordance with *Werner* and *Rose*, we answer the first question above in the affirmative. A policy of an insurance may limit recovery of its underinsured coverage so long as it tracks the corresponding limit on liability coverage and the limitation is unambiguous.

Having answered the first question, we now turn our attention to the second question, keeping in mind the caveat above that if a policy of insurance is to limit underinsured motorist coverage, it must track the corresponding limit of liability coverage and must unambiguously limit coverage.

■ Since the provisions in the policies at issue track the limits of liability coverage, we need not say more about the first requirement of *Werner* and *Rose*. Nevertheless, the policies at issue still must be judged for their sufficiency in unambiguously limiting liability to a single limit of recovery.

The insurance policies in this case provide:

"Limits of Liability

"1. The amount of coverage is shown on the declarations page under 'Limits of Liability—U—Each Person, Each Accident.' Under 'Each Person' is the amount of coverage for all damages *due to* bodily injury to one person. Under 'Each Accident' is the total amount of coverage for all damages *due to* bodily injury to two or more persons in the same accident." (Emphasis added.)

To judge the sufficiency of this language to limit the underinsured motorist coverage, we examine the litany of cases which have been rendered by the Ohio Supreme Court in recent years.

The first in the series of cases is *Dues v. Hodge* (1988), 36 Ohio St.3d 46, 521 N.E.2d 789. In *Dues*, the language of the insurance policies drafted by State Farm was examined. " ' * * * Each of the three policies carried uninsured motorist coverage liability limits which provided $100,000 for all damages due to bodily injury to one person, and $300,000 for all damages *due to* bodily injury to all parties.' " (Emphasis added.) *Id.* at 46, 521 N.E.2d at 791. The court's holding in that case was not based upon the use of the words "due to," but instead was based upon the fact that a derivative claim for negligent infliction of emotional distress was involved, rather than a primary action for bodily injury. The court said that " * * * we find the language of State Farm's policies limited coverage to $100,000 for all actions arising from a single accident or occurrence involving bodily injury to one person." *Id.* at 48, 521 N.E.2d at 792.

Whereas the *Dues* case involved a derivative claim, the case *sub judice* involves primary claims. Accordingly, though the policy language in *Dues* is similar to that at bar, the holding cannot be applied to the case at bar because of the dissimilar nature of the claims involved, *i.e.*, a derivative claim versus a primary claim.

After *Dues* came *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 540 N.E.2d 716. In *Tomlinson*, "[t]he central issue [was] * * * whether a claim for loss

of services and consortium constitute[d] a separate claim for 'bodily injury' within the liability coverage provided * * * in [the] policy. * * *" *Id.* at 12, 540 N.E.2d at 717. The declaration page of the policy provided liability coverage *for* "BODILY INJURY" in the amount of $25,000 " '[e]ach [a]ccident.' " *Id.* at 13, 540 N.E.2d at 718. The court held " * * * that, when read in context, 'due to,' 'for,' and 'resulting from' are all used as synonyms for 'because of' or 'arising out of.' * * *" *Id.* at 15, 540 N.E.2d at 720. The court ruled that the subject policy sufficiently limited liability to a single limit of liability.

As in *Dues, Tomlinson* involved derivative claims, whereas the case at bar involves primary claims. The dissimilar nature of the claims involved in this case, as compared with that in *Tomlinson,* sufficiently distinguish these two cases and preclude application of *Tomlinson's* holding to the one at bar.

Following *Tomlinson,* came *Rose, supra.* In *Rose,* the court stated "[t]he sole issue before us on certification from the federal district court is whether 'the language in coverage A, liability coverage, as amended in [the] endorsement * * * [is] clear and unambiguous so as to limit *all* * * * death claims * * * to a single $50,000.00 recovery[.]' * * *" (Emphasis *sic.*) *Rose, supra,* 61 Ohio St.3d at 530, 575 N.E.2d at 460. The policy stated as follows:

" 'The amount of bodily injury liability coverage is shown on the declarations page under "Limits of liability—Coverage A—Bodily Injury, Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages, including damages for care and loss of services, *arising out of and due to bodily injury* to one *person.* Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person," for all such damages *arising out of and due to bodily injury* to two or more *persons* in the same accident." (Emphasis added in part.) *Id.*

After review, the court concluded that the subject policy language clearly and unambiguously set forth the policy limitation and tracked the corresponding limitations on general liability coverage. Specifically, it said that " * * * the policy endorsement provided that *all* claims *arising out of* each bodily injury to one person involved in a *single* accident would be subject to the $50,000 'Each Person, Each Accident' limit. * * *" (Emphasis added in part.) *Rose, supra,* at 532–533, 575 N.E.2d at 462.

By comparison, the policy found in *Rose* uses the words "arising out and due to," whereas the policies in the case at bar use only the term "due to." Nevertheless, as stated above, in *Tomlinson,* the Ohio Supreme court said that these terms are synonymous, *i.e.,* "due to" is synonymous with "arising out of." *Tomlinson, supra,* 44 Ohio St.3d at 14, 540 N.E.2d at 719. And while *Tomlinson* is distinguishable from the case at bar, based on the claims

made therein, the Supreme Court's view concerning the meaning of these terms cannot be disregarded.

Therefore, since "due to" is used in the policies at issue in the case at bar, and "due to" has been found to be equivalent to "arising out of," and, further, since "arising out of" has been found sufficiently to limit underinsured motorist coverage to a single, per person limit of liability, we thus answer the second question in the affirmative. The policies at issue sufficiently limit recovery to a single, per person limit of liability and such policy language is not ambiguous.

Digressing for a moment, we note that in their "Statement of Supplemental Authority," appellants contend that *Tomlinson* is no longer "good law." Appellants contend that *Tomlinson* has been overruled by *Cincinnati Ins. Co. v. Phillips* (1990), 52 Ohio St.3d 162, 166, 556 N.E.2d 1150, 1154, because in a footnote to his concurring opinion in that case, Justice H. Brown states, " * * * I believe that today's decision should be read as overruling *Tomlinson*." Yet, despite plaintiff's belief and Justice Brown's wishes, the majority of the Ohio Supreme Court has continued to cite *Tomlinson*. See *Rose, supra*, 61 Ohio St.3d at 532, 575 N.E.2d at 461. In sum, we find that Ohio law permits the limitation of underinsured motorist coverage when the underinsured motorist provision tracks the limits of liability and the policy unambiguously sets forth the limitation. Secondly, we find that the policies at issue limit plaintiffs' recovery to $100,000.

Therefore, we overrule plaintiffs' single assignment of error and affirm the decision of the trial court.

*Judgment affirmed.*

Bowman and Reilly, JJ., concur.

Archer E. Reilly, J., retired, of the Tenth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.