Joseph M. SANSONE, et al., Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants.

No. C–1–91–765.

United States District Court, S.D. Ohio, W.D.

Feb. 9, 1993.

Dexter Arthur Rabourn, Waite, Schneider, Bayless & Chesley Co., Cincinnati, OH, for plaintiffs.

Patricia S. Oney, pro se.

James Richard Gallagher, Hamilton, Kramer, Myers & Cheek, Columbus, OH, for State Farm Mutual and State Farm Mut. Auto.

Joseph Wessendarp, West Chester, OH, for James Joseph Craig.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPIEGEL, District Judge.

The Court held a hearing on September 8, 1992, on the Plaintiffs' Motion for Partial Summary Judgment (doc. 7), the Defendants' Response (doc. 9), the Third Party Defendants' Motion for Partial Summary Judgment (doc. 11), the Motion by Plaintiff Patricia S. Oney for Summary Judgment (doc. 12), the Defendants' Response (doc. 14), the Plaintiffs' Response (doc. 16). At the hearing, the Court requested additional briefing of an agreed stipulation of fact (doc. 21), the Plaintiffs' Memorandum in Support (doc. 22), and the Plaintiffs' Proposed Conclusions of Law (doc. 23).

### BACKGROUND

The parties have agreed to the following facts. On November 5, 1989, Heather Craig, age 15, was riding in a car being driven by her friend, Vanessa Singleton. Vanessa Singleton lost control of the car, went off the road, and her car struck a utility pole. As a result of the accident, Heather Craig was hospitalized for a week and a half and then died as a result of the injuries which she sustained in the accident. Heather Craig did not have a will.

At the time of the accident, Heather Craig was living with her natural mother, Carol Sansone, and her step-father, Joseph Sansone. Heather Craig was also survived by her natural father, James Craig, who maintained his own separate residence.

The Probate Court appointed Patricia Oney as the Administrator of Heather Craig's estate. Patricia Oney first asserted claims against Vanessa Singleton for wrongful death on behalf of Heather Craig's natural mother, Carol Sansone, and her natural father, James Craig. At the time of the accident, Vanessa Singleton had a Colonial Insurance Company policy of liability insurance in effect. Colonial Insurance offered to pay the limit of Vanessa Singleton's coverage, $25,000. Patricia Oney accepted the $25,000 and the Butler County Probate Court subsequently approved of the settlement. State Farm Mutual Automobile Insurance Company ("State Farm"), which had two insurance policies in effect with Joseph Sansone, agreed to the Sansones' settlement with Colonial Insurance Company, and expressly waived any right of subrogation that it had or might obtain against Ms. Singleton.

At the time of the accident, Joseph Sansone, Heather Craig's step-father, had two automobile insurance policies with State Farm. Both of the policies contained underinsured motorist protection of $100,000 for each person, $300,000 for each accident. James Craig, Heather Craig's natural father, did not have a policy of underinsured motorist coverage at the time of the accident.

After settling with Colonial Insurance, Patricia Oney, the administrator of Heather Craig's estate presented underinsured motorist coverage claims to State Farm. Patricia Oney asserted the following claims: (1) a claim on behalf of Heather Craig for the damages incurred by her from the time of her accident to the time of her death; (2) a

wrongful death claim on behalf of her mother, Carol Sansone; (3) a wrongful death claim on behalf of her natural father, James Craig; and, (4) a wrongful death claim on behalf of the deceased step-father, Joseph Sansone.

State Farm has asserted that it is not liable for all these claims. Joseph Sansone's insurance policy states in pertinent part:

> We will pay damages for **bodily injury** an insured is legally entitled to collect from the owner or driver of an **uninsured motor vehicle.** The **bodily injury** must be caused by accident arising out of the operation, maintenance, or use of an **uninsured motor vehicle.**

Agreed Stipulations of Fact, doc. 21, attached as exh. A (emphasis in original). The underinsured motorist coverage of the State Farm policy defines the term "insured" as:

> **Insured**—means the person or persons covered by uninsured motor vehicle coverage. That is: 1. The first **person** named in the declarations; 2. His or her spouse; 3. Their **relatives**....

*Id.* (emphasis in original).

The policy defines spouse as "[s]**pouse**—means **your** husband or wife while living with **you.**" *Id.* (emphasis in original). Similarly, the term relative is defined as a "**person** related to **you** or **your spouse** by blood, marriage, or adoption who lives with you. It includes **your** unmarried and unemancipated child away at school."

Finally, the policy contains the following provision regarding the stacking of coverage:

> **If There is Other Similar Coverage**
>
> **1. If Other Policies Issued by Us To You Apply**
>
> If two or more motor vehicle liability policies issued. by us to **you** providing uninsured motor vehicle coverage apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

*Id.* (emphasis in original). The issues in this case boil down to the question of the amount of State Farm's liability and who may recover that amount.

## DISCUSSION

### The "Per Occurrence" Provisions

■ Each of Mr. Sansone's insurance policies with State Farm contained underinsured motorist coverage with limits of $100,000 for each person and $300,000 for each accident. State Farm's liability in this case is limited to $100,000 under *State Farm Auto. Ins. Co. v. Rose,* 61 Ohio St.3d 528, 575 N.E.2d 459 (1991). In *Rose,* the Ohio Supreme Court found the language of a liability insurance policy which is identical to the language in this case to be clear:

> *all* claims resulting from an injury to one person involved in a single accident will be subject to the 'Each Person' limit of liability contained in the respective policy.

*Id.* at 531, 575 N.E.2d at 461 (emphasis in original); *see also Berleman v. State Farm Mut. Auto Ins. Co.,* 76 Ohio App.3d 81, 600 N.E.2d 1145 (Hamilton Cty.1992) (applying *Rose* to wrongful death claim); *Yearling v. State Farm Ins. Co.,* 76 Ohio App.3d 559, 602 N.E.2d 434 (Franklin Cty.), *motion overruled,* 65 Ohio St.3d 1420, 598 N.E.2d 1171 (1992) (same).

Plaintiffs Joseph and Carol Sansone try to distinguish *Rose,* because *Rose* dealt with liability insurance, whereas underinsured motorist coverage is involved in this case. The Plaintiffs, however, offer no reasons why this Court should treat liability coverage any differently than underinsured motorist coverage. Therefore, given that the relevant insurance policy language in *Rose* is identical to the language in this case, we find that State Farm's maximum coverage owed in this matter consists of a single $100,000 "each person" limit of underinsured motorist coverage. *See Yearling,* 76 Ohio App.3d at 564, 602 N.E.2d at 438 ("Ohio law permits the limitation of underinsured motorist coverage when the underinsured motorist provision tracks the limits of liability and the policy unambiguously tracks the limitation.").

### The Stacking of Coverage

■ The next issue is whether the Plaintiffs are entitled to recover under both of their insurance policies with State Farm.

This issue has also been conclusively resolved by the Ohio Supreme Court. Ohio Rev.Code § 3937.18(G) provides that insurance companies may prevent the stacking of uninsured motorist coverage in their policies. In interpreting Ohio Rev.Code § 3937.18(G), the Ohio Supreme Court approved the anti-stacking language used by State Farm:

> the anti-stacking provision must be both unambiguous and clear and conspicuous in the policy. We find the above language to be unambiguous. The language 'the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability' can only be interpreted to mean that the insured may not stack coverage.

*Dues v. Hodge*, 36 Ohio St.3d 46, 48, 521 N.E.2d 789, 792 (1988). Therefore, given that the same anti-stacking language in *Dues* is at issue in this case, we find that the Plaintiffs in this case may only collect upon one of their insurance policies with State Farm.

### *Whether the Survivorship and Wrongful Death Claims are Separate*

■ The Plaintiffs further request this Court to rule that survivorship and wrongful death claims are separate from one another. Regardless, the Ohio Supreme Court has already decided that "an automobile insurance policy may apply a single limit to separate claims arising out of a single bodily injury . . . provided that such policy limitation tracks the corresponding limitation on liability coverage, and is unambiguously stated." *State Farm Auto. Ins. Co. v. Rose*, 61 Ohio St.3d at 532, 575 N.E.2d at 459 (1991); *Hixson v. State Farm Mut. Auto. Ins. Co.*, Case No. C–1–91–397, 1992 WL 81330 (S.D.Ohio Feb. 19, 1992) (J. Spiegel). Thus, the limit of liability coverage is determined by the number of persons injured or killed in an accident, not by the number of persons claiming damages as a result of the accident. *Burris v. Grange Mut. Cos.*, 46 Ohio St.3d 84, 85, syllabus ¶ 2, 545 N.E.2d 83, 85, syllabus ¶ 2 (1989). Therefore, State Farm may apply a single limit to the separate claims arising out of a single injury.

### *Who May Recover From State Farm*

■ The next issue is whether James Craig, the natural father of Heather Craig, is entitled to claim any proceeds under Joseph Sansone's insurance policy with State Farm.

Joseph and Carol Sansone and State Farm contend that James Craig may not recover, because he is not in privity of contract with State Farm. Joseph and Carol Sansone point to the decision in *Wood v. Shepard*, 38 Ohio St.3d 86, 526 N.E.2d 1089 (1988) to support their point. In *Wood*, the court commented in dicta that:

> [i]t is contended that the wrongful death statute . . . could be used to permit recovery by persons who are not in anyway contractually in privity with an underinsured carrier. This of course is not the case. Only an *insured* under the underinsured motorist provision can recover under the policy for injury or wrongful death.

*Id.* at 91, 526 N.E.2d at 1093 (emphasis in original).

In Joseph Sansone's insurance policy with State Farm, "insured" is defined as "the person or persons covered by uninsured motor vehicle coverage . . . [t]hat is . . . their **relatives** . . . ." *See* Plaintiffs' Motion for Partial Summary Judgment, doc. 7, exh. 1 (emphasis in original). Based upon this language, Heather Craig was an *insured* under the State Farm policy. *See Wood*, 38 Ohio St.3d at 91, 526 N.E.2d at 1093.

In light of this conclusion, we must determine who is a beneficiary of the insurance proceeds held by Heather Craig's estate. An action for wrongful death must be brought in the name of the personal representative of the decedent for the exclusive benefit of the beneficiaries listed in Ohio Rev.Code § 2125.-02(A)(1). Ms. Oney, as the duly appointed administratrix of Heather Craig's estate, serves in a dual capacity: (1) as personal representative of Heather Craig's probate estate, including any damages Heather Craig suffered before she died (i.e., the surviving claim); and, (2) as personal representative for the beneficiaries of Heather Craig's wrongful death claim under Ohio Rev.Code § 2125.02(A)(1). *See Jones v. Wittenberg University*, 534 F.2d 1203, 1207 (6th Cir.

1976) (drawing the contrast between survivorship actions and wrongful death actions); *May Coal v. Robinette*, 120 Ohio St. 110, 165 N.E. 576 (1929) (same).

The wrongful death statute, Ohio Rev. Code § 2125.01, dictates who may bring an action for wrongful death. Under the wrongful death statute, when a person dies because of a tortfeasor's negligence, the Probate Court appoints an administrator acting as a fiduciary to pursue the claims of the decedent. *Id.* Any wrongful death proceeds recovered by the administrator are distributed to the beneficiaries of the decedent according to Ohio law.[1] Ohio Rev.Code § 2125.02. In Heather Craig's estate, these beneficiaries are "the parents of the decedent," Mrs. Sansone and Mr. Craig.

■ We note that the probate court has discretion to adjust the share of proceeds to each beneficiary. Ohio Rev.Code § 2125.-03(A). Thus, we leave to the probate court the decision of how the insurance proceeds are to be divided between the beneficiaries of Heather Craig's intestate estate and the beneficiaries under the wrongful death statute. Ohio Rev.Code § 2125.03(A); *see also Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946) (holding that federal courts do not have the power to probate wills or administer estates); Gregory C. Luke and Daniel J. Hoffheimer, *Federal Probate Jurisdiction: Examining the Exception to the Rule,* 39 Federal Bar News & Journal 579 (Nov.–Dec. 1992) (discussing the general reluctance of federal courts to involve themselves in probate issues, particularly in "purely probate matters").

### CONCLUSION

Our conclusions of law are as follows: (1) the maximum coverage State Farm owes in this case is $100,000; (2) the Plaintiffs may only recover upon one of their insurance policies with State Farm; (3) State Farm may apply a single limit to the separate claims arising out of a single injury; (4) the Butler County Probate Court has the discretion to divide Heather Craig's insurance proceeds, according to Ohio law, as well as this Court's Order.

SO ORDERED.

---

1. Ohio Rev.Code § 2125.02(A)(1) provides that only parents, spouse, minor children and other next of kin may recover for wrongful death. Only one small exception has been made to this rule. In *Lawson v. Atwood*, 42 Ohio St.3d 69, 536 N.E.2d 1167, *cert. denied*, 493 U.S. 862, 110 S.Ct. 176, 107 L.Ed.2d 132 (1989), the natural parents abandoned their child, and a man raised the abandoned child as his own for sixteen years. When the child died, the Ohio Supreme Court permitted the man to pursue a wrongful death claim because four criteria were met: (1) the natural parents abandoned parental rights to the child; (2) the one claiming to be a parent had acted as a parent; (3) the child and the one claiming to be parent had held themselves out as parent and child; and (4) the relationship between the child and the one claiming to be parent had been publicly recognized. *Id.*

In the case at bar, the Plaintiffs' Complaint does not contain allegations that the natural parents of Heather Craig abandoned their parental rights over her. Therefore, the *Lawson* exception does not apply. Accordingly, Joseph Sansone, Heather Craig's step-father, may not recover for his wrongful death claim.