RANDOLPH, Presiding Justice,
for the Court:
¶ 1. Following a final order from the Chancery Court of Lincoln County that Halley Smith is not a wrongful-death beneficiary of Justin Smith, Halley appeals and *510 asks this Court to judicially declare that an in loco parentis child qualifies as a wrongful-death beneficiary under Mississippi Code Section 11-7-13. Halley argues that “[pjublic policy and the best interests of Mississippi children demand that in loco parentis children should be included as wrongful death beneficiaries of their psue-do-parent.”[1] Finding that an in loco par-entis child does not qualify as a wrongful-death beneficiary, we affirm the trial court’s judgment.

FACTUAL BACKGROUND

¶ 2. Justin Michael Smith, the decedent, married Holly Kyzar Smith in October 2000. Two months later, Holly gave birth to Halley Ellas Smith. Justin signed the birth certificate as Halley’s father. For eight years, Justin supported Halley financially and actively participated in Halley’s life. Justin also claimed Halley as a dependent on his tax returns for seven years. Halley lived with Justin and Holly for almost eight years.
¶ 3. Holly and Justin separated in 2007, and a complaint for divorce was filed. Unbeknownst to Holly, Justin sought a DNA test which established that Justin was not Halley’s father. Holly questioned the results. As a part of the divorce proceeding, a subsequent DNA test[2] was ordered on September 25, 2008, that confirmed that Justin was not Halley’s biological father. Separately, an additional DNA test on February 5, 2009 established that Joseph Montgomery, not Justin, was Halley’s biological father.[3] Thereafter, Justin’s name was removed from Halley’s birth certificate, and Montgomery was listed as Halley’s biological father. Montgomery also was awarded visitation rights and ordered to pay child support. Justin died on July 19, 2009. At the time of his death, divorce had not been granted.
¶ 4. Holly was appointed administratrix of Justin’s estate in January of 2010. Holly filed a petition to establish heirship, naming herself and only Payln Mae Smith, Justin’s natural daughter, as Justin’s known heirs. Holly made no claim that Halley was an heir of Justin. The chancery court, on April 6, 2010, entered an order, at Holly’s behest, declaring that Holly and Payln were the sole heirs.
¶ 5. On September 22, 2011, Holly filed a Petition For Authority To Settle Doubtful Claims, on behalf of Palyn. The chancery court approved the settlement and directed the distribution of funds equally to Holly, individually, and Holly, as guardian of Palyn. On the very same day, without serving the parties the court had authorized to be released, Holly filed a Petition For Reconsideration Of Heirship Determination, stating that “[a]n issue has now arisen as to whether Halley Ellas Smith, a minor, is also an heir-at-law of decedent Justin Michael Smith. Specifically, Halley Ellas Smith was born on December 29, 2000, during the marriage of the Decedent and Holly Kyzar Smith (Petitioner), and was treated as the daughter of Justin Michael Smith.” Holly’s act of filing the petition for reconsideration after soliciting and obtaining authority to settle outstanding claims raises a host of other issues, as raised by the released parties, who intervened. However, as the trial court did not address these issues, and as its ruling was *511 otherwise dispositive, neither shall we. We examine only the judgments before us. The Court order under attack and presented to the trial court for reconsideration was the April 6, 2010, decree in which Holly and Palyn were declared to be Justin’s sole heirs-at-law.
¶ 6. After the court appointed a guardian ad litem to represent Halley, Halley’s guardian ad litem also filed a motion to reconsider the heirship determination of April 6, claiming that “Halley Smith is the in loco parentis child of Justin Smith, deceased, and should be adjudicated to be one of his heirs at law and wrongful death beneficiaries.... ” Subsequently, the chancery court held a hearing on the motions and entered an order finding that:
Halley is the in loco parentis daughter of Justin Smith; ... Halley is not the biological daughter of Justin Smith, as the presumption of paternity has effectively been rebutted; ... an in loco parentis child of a deceased individual does not stand as a wrongful death beneficiary of that deceased individual; therefore, Halley is not a wrongful death beneficiary of Justin.
¶ 7. Halley then filed another motion to reconsider the order denying reconsideration of the April 6 order, which the chancellor denied. In her appeal, she claims that “in loco parentis children should be included as wrongful-death beneficiaries of their pseudo-parent.” The parties do not contest the chancellor’s determination that Halley was an in loco parentis child of Justin.[4] Instead, Halley invites this Court to judicially amend the wrongful-death statute to include in loco children as persons entitled to recover under Section 11-7-18. We decline.

STANDARD OF REVIEW

¶ 8. The issue before the Court is whether an in loco parentis child qualifies as a wrongful-death beneficiary under Mississippi’s wrongful-death statute. Because this is an appeal from chancery court on an interpretation of a statute, the standard of review is de novo. Miss. Dep’t of Transp. v. Allred, 928 So.2d 152, 154 (Miss.2006).

DISCUSSION

¶ 9. This Court has recognized the doctrine of in loco parentis for more than a century. Fortinberry v. Holmes, 89 Miss. 373, 42 So. 799, 799 (1907). Specifically, the doctrine is defined as follows:
A person in loco parentis may be defined as one who has assumed the status and obligations of a parent without a formal adoption. The rights, duties and liabilities of one standing in loco parentis are the same as those of a natural parent. Whether the relationship exists is a matter of intention and of fact to be deduced ■ from the circumstances of the particular case.
Farve v. Medders, 241 Miss. 75, 128 So.2d 877, 879 (1961).
¶ 10. In short, Halley is not a wrongful-death beneficiary because she is not Justin’s child, as defined in Mississippi Code Section 11-7-13. See Miss.Code Ann. § 11-7-13 (Rev.2004). We strictly construe Section 11-7-13. Smith v. Garrett, 287 So.2d 258, 260 (Miss.1973). Moreover, this Court lacks the power to expand the definition of “child.” See Burley v. Douglas, 26 So.3d 1013, 1020 (Miss.2009). The relevant part of the statute is as follows:
... Damages for the injury and death of a married man shall be equally distribut *512 ed to his wife and children .... The provisions of this section shall apply to illegitimate children on account of the death of the natural father and to the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.
[[Image here]]
Any rights which a blood parent or parents may have under this section are hereby conferred upon and vested in an adopting parent or adopting parents surviving their deceased adopted child, just as if the child were theirs by the full-blood and had been born to the adopting parents in lawful wedlock.
Miss.Code Ann. § 11-7-13 (Rev.2004) (emphasis added). In addition to covering natural children, the statute includes express language that brings both adopted children and illegitimate children within the purview of “children.” The statute is silent as to in loco children. Since this Court must strictly construe the statute, we find that in loco children do not fall within the definition of children in Mississippi’s wrongful-death statute.
¶ 11. Halley argues that in loco children should be treated as adoptive children and points out that adoptive children may inherit from both their natural and adoptive parents. Although adoptive children may inherit from both their natural and adoptive parents,[5] the same privileges do not extend to in loco children. Adoption is a legal process with specific formalities that create a new parent-child relationship, as opposed to an in loco parentis relationship, which lacks the formalities of adoption. See Deborah Bell, Mississippi Family Law § 17 (1st ed.2005). Of prime importance, the rights of the biological parents must be terminated as a prerequisite to adoption. Id. This did not occur in the case sub judice. Montgomery, the natural father, did not terminate his parental rights to Halley. Far from it, he pays child support and has visitation rights with Halley. Thus, Halley is not an adoptive child.
¶ 12. Halley also urges this Court to follow the workers’ compensation statute and the Longshoremen’s and Harbor Workers’ Compensation Act. This Court found in loco children as proper beneficiaries under the workers’ compensation statute. However, the Workers’ Compensation statute provides express language[6] that covers in loco children. Longleaf Forest Prods., Inc. v. Hopkins, 349 So.2d 523, 525 (Miss.1977). Likewise, the court in Ryaiu-Walsh allowed an in loco child to recover based on similar express language [7] in the Longshoremen’s and Harbor Workers’ Compensation Act. Ryam-Walsh Stevedoring Co., Inc. v. Trainer, 601 F.2d 1306, 1318 (5th Cir.1979). As discussed supra, Mississippi’s wrongful-death statute lacks such language.
¶ 13. Finally, Halley points to statutes and opinions from other states to support allowing in loco children to recover as wrongful-death beneficiaries. The Ohio *513 Supreme Court did allow an in loco child to recover as a wrongful-death beneficiary. Lawson v. Atwood, 42 Ohio St.3d 69, 536 N.E.2d 1167, 1170 (1989). However, the Ohio court further ruled that such a claim can survive only if “the natural parents of the child have disclaimed or abandoned parental rights to the child.” Id. No abandonment occurred here. Finally, both Arkansas and Delaware include in loco relationships within the express definition of wrongful-death beneficiaries, unlike the statute in the present case.[8]
¶ 14. The dissent revisits an alternative argument filed in the trial court by Halley, but not advanced before this Court on appeal. The only issue presented on appeal was whether “[a]n In Loco Parentis child is a wrongful death beneficiary.”[9] Halley, in the second sentence of her brief, states “[t]he child was correctly found to be the in loco parentis child of [Justin].” The parties acknowledge that Halley was not the child of Justin. Based on the record, at least three separate DNA tests performed before Justin’s death established that Justin was not Halley’s father. Both a DNA test showing a 99.997 percent likelihood that Montgomery was Halley’s father, and a DNA test showing a 0.0 percent chance that Justin was Halley’s father were filed in' Lincoln County.[10] Holly also offered sworn testimony that Holly, Justin, and Montgomery all knew that Justin was not Halley’s father prior to his death and she did not ask the chancery court to have Hailey considered an heir, “since Justin was shown not to be [Halley’s] biological father.... I just assumed [Halley] would not be entitled to any financial money.”
¶ 15. “[DNA] test results may rebut the presumption of legitimacy.” Rafferty v. Perkins, 757 So.2d 992, 995 (Miss.2000). “Mississippi law provides that if the probability of paternity ... is 98% or greater, there is a rebuttable presumption of paternity.” In re B.N.N., 928 So.2d 197, 200 (Miss.Ct.App.2006); See Miss.Code. Ann. § 93-9-27 (Rev.2013). “Where scientific evidence points overwhelmingly towards one man as the father of a child, paternity is established; the only matter left to resolve in the paternity action is that of support.” Griffith v. Pell, 881 So.2d 227, 230-31 (Miss.Ct.App.2003) (citing Rafferty, 757 So.2d at 996). Earlier paternity orders “may be vacated once DNA testing establishes someone other than the named individual is the child’s biological father.” Griffith v. Pell, 881 So.2d 227, 231 (Miss.Ct.App.2003) (citing M.A.S. v. Miss. Dep’t of Human Servs., 842 So.2d 527, 531 (Miss.2003)). Considering the unequivocal evidence before the chancellor, it cannot be fairly argued that the learned chancellor erred in finding that the presumption of paternity had been rebutted, nor that Halley is a person entitled to recover under the Section 11-7-13.
¶ 16. The dissent cites a descent and distribution case, Hogan,[11] which presents issues entirely different than those before us today and opines that “our laws of descent and distribution hold that Halley’s legal status at the time of Justin’s death would determine whether she was a wrongful death beneficiary.” However, it *514 is “incorrect as a matter of law” to consider descent and distribution cases or statutes governing descent and distribution when considering a wrongful-death case. Ray v. Ray, 963 So.2d 20, 26 (Miss.Ct.App.2007) (finding that the “relatives” position regarding the laws of intestacy regarding descent and distribution is incorrect as a matter of law because the proper course of determining the wrongful death beneficiaries ... necessarily involves a reading of the wrongful death beneficiary statute.”) “A wrongful death action is a separate action from the estate of the deceased, therefore, the beneficiaries of a wrongful death action for the death of the decedent may differ from the heirs of the intestate’s estate.” Ray v. Ray, 968 So.2d 20, 26 (Miss.Ct.App.2007). Assuming arguendo that this Court considers descent and distribution statutes, Halley is the illegitimate child of Montgomery, not Justin. Thus, Section 91—1—15(3)(b) of the Mississippi Code and Hogan both are inapplicable.
¶ 17. The “determinative issue” in Hogan, as identified by the dissent, “was whether a prior judgment establishing paternity could ‘bind the estate pursuant to the plain language of Miss.Code. Ann § 91-1-15(3)(b) (1994)’” (Diss.Op-¶23) (emphasis added).[12] However, Section 91-1-15 prescribes only how illegitimate children can recover from their natural parents, which does not apply to the facts of the case sub judice. See Miss.Code Ann. § 91—1—15(1)(c) (Rev.2013). An “illegitimate ” child is defined in Section 91-1-15 as “a person who at the time of his birth was born to natural parents not married to each other and not legitimized ... through a proper judicial proceeding.” Miss.Code Ann. § 91—1—15(1)(c) (Rev.2013) (emphasis added). Quite the opposite, Halley was born into a marriage to a father who was not her natural father. “Natural” father is defined as the biological father. Miss.Code Ann. § 91—1—15(1)(d) (Rev.2013). Justin does not fit the statutory definition of “natural father” as used in Section 91-1-15, nor does Halley, in relation to Justin, meet the definition of “illegitimate” child as defined in the statute. Instead, Halley, as defined in Section 91-1-15, is the illegitimate child of Montgomery. Therefore, Section 91-1-15 can only provide an avenue for Halley to recover from Montgomery, an issue not before this Court today. Moreover, the holding in Hogan was that “the language of § 91 — 1—15(3)(b) makes clear that an illegitimate inherits from the kindred of his natural father where, as in the present case, there has been a prior adjudication of paternity.” Hogan, 730 So.2d at 20 (emphasis added). Thus, neither Section 91-1-15 nor the holding of Hogan provides for Halley to inherit from Justin.
¶ 18. Neither doés Burley support the dissent’s position. Burley v. Douglas, 26 So.3d 1013, 1015, 1023-24 (Miss.2009). Burley addressed only the issue of standing to bring a wrongful-death claim, not the ability to recover wrongful-death benefits. Burley v. Douglas, 26 So.3d 1013, 1015 (Miss.2009). While Burley recognized the petitioner as a wrongful-death claimant and an interested party “because of his qualification as an heir-at-law,” Bur-ley also declared that the petitioner’s heir-in-law status did not equate to recovery as a wrongful-death beneficiary. Id. at 1021-23 (“Our holding today recognizes the statutory distinction between a party’s authority to bring a wrongful-death action and the party’s ability to recover damages from it.). The Burley court further held that the petitioner’s “ability to recover damages ... is a separate question,” from standing. Id. at 1023 (“Burley’s ability, or *515 lack thereof, to seek and/or recover certain damages ... does not determine the character of his standing as a particular type of wrongful-death claimant.”) (emphasis added).

CONCLUSION

¶ 19. Because Mississippi Code Section 11-7-13 does not provide a cause of action for in loco children, we affirm the trial court’s determination that Halley is not a wrongful-death beneficiary of Justin.
¶ 20. AFFIRMED.
WALLER, C.J., DICKINSON, P.J., CHANDLER AND PIERCE, JJ., CONCUR. LAMAR AND COLEMAN, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, KING AND COLEMAN, JJ.

. Appellant’s Brief at 2.

. On September 25, 2008, Justin and Holly entered an agreed order for new paternity testing. On October 13, 2008, they filed with the court a Genetic Test Report "where Justin was found to have 0% probability of paternity of Halley.”

.The February 5, 2009, DNA test established a 99.997% probability that Joseph Montgomery was the father of Halley.

. Halley concedes in her brief that “[t]he child was correctly found to be the in loco parentis child of [Justin].” (Appellant’s Brief at 2).

. Alack v. Phelps, 230 So.2d 789, 793 (Miss.1970) ("We think the intent of the legislature is clear; they intended for the [adopted] child to continue to inherit from his natural parents.”)

. "Child” shall include ... a child in relation to whom the deceased employee stood in the place of a parent for at least one (1) year prior to the time of injury.” Miss.Code Ann. § 71-3-3(1) (Rev.2011).

."Child” shall include ... a child in relation to whom the deceased employee stood in loco parentis for at least one year prior to the time of injury.” 33 U.S.C. § 902(14) (2009).

. Ark.Code Ann. § 16-62-102(d); Del.Code Ann. tit. 10 § 3724(d)(5) (1999).

. Apellant’s Statement of the Issues, Appellant's Brief at 1.

. Only the Montgomery DNA test is in the record. However, Halley, in the Guardian Ad Litem brief, concedes that "On October 13, 2008, a Genetic Test Report was filed ... where Justin was found to have 0% probability of paternity of Halley.”

. Hogan v. Buckingham ex rel. Buckingham, 730 So.2d 15 (Miss.1998).

. This is quite a distinction from establishing who may bring a wrongful-death action.