CALHOUN, APPELLEE, *v.* MIDDLETOWN COCA-COLA BOTTLING COMPANY, APPELLANT.

(No. CA 73-11-0084—Decided October 21 1974.)

*Mr. Vincent A. Sisson,* for appellee.
*Messrs. Barbour, Kimpel & Allen* and *Mr. Edward K. Halaby,* for appellant.

PALMER, J. This is an appeal from a judgment of the Court of Common Pleas of Butler County entered pursuant to a jury verdict in favor of the plaintiff, the appellee herein. The record reveals that plaintiff, a sixteen year old boy, was severly burned when flaming gasoline was thrown upon him by a mechanic engaged by the defendant's driver in repairing defendant's truck. The plaintiff, Calhoun, was directly employed as a helper by the truck driver for the purpose of assisting the driver in making deliveries of Coca-Cola products. There is testimony that defendant's general policy forbade the employment of individuals under eighteen years of age, and further forbade unauthorized

riders on its trucks. There was no evidence that defendant had any actual notice of the hiring of young Calhoun by its driver. The driver was, however, authorized by defendant to have minor repairs performed on the truck, and was given a credit card to charge such repairs to it. The driver experienced some mechanical problems with the truck and accordingly took it to a mechanic for repairs.

The truck was an enclosed delivery van, wherein access to the engine is achieved by removing a cover within the driver's compartment. The engine is located partially above and partially below floor level to the right of the driver's seat. With the engine cover removed and the gasoline line disconnected from the fuel pump, defendant's servant and the mechanic were mutually engaged within the confined cab area in the act of turning over the engine, in order to determine whether the fuel pump was operational. Their procedure required the driver to activate the engine by turning the ignition switch in order to permit the mechanic to observe whether or not raw gasoline would spurt from the pump into a can which the mechanic was holding in the engine compartment.

While so engaged, the driver and the mechanic discussed the possibility of fire being caused by the continued starting of the engine while "raw gas was in the air." The record is clear that sparks were visible and apparent to both the driver and mechanic in the vicinity of the can the mechanic was holding. The victim was near the right front door of the van, either outside the truck, perhaps on the running board, but he did not hear the discussion concerning a possible fire, nor could he see what the driver and mechanic were doing.

Persisting in their diagnostic procedure, defendant's servant and the mechanic continued to start the engine and observe the workings of the pump, all the while cognizant of the sparks and the raw aerated gasoline being collected in the can. Some concern was expressed by the driver over this dangerous condition and he suggested using a rubber hose to prevent ignition of the gasoline. Nothing, however, was done and eventually the sparks

ignited the gasoline, causing fire in the can. The mechanic then threw the flaming can out the only opening available to him, the right front door of the van, and thereby cast it directly at and onto the plaintiff, whose attempt to run from the hazard when he saw the fire was unsuccessful. His clothing ignited and he was as a consequence thereof subjected to direct flames for perhaps three to four minutes. The flames resulted in severe burns on his back, arms, torso and thighs, and required skin grafts from various portions of his body.

A settlement was arrived at prior to trial between plaintiff and the mechanic. This appeal concerns only the liability of defendant for the negligence of its servant, the driver of the truck, toward his helper, the victim Calhoun.

Defendant presents three assignments of error, the first of which asserts that the trial court erred in failing to grant its motion for a directed verdict at the close of the evidence. In support thereof, defendant argues "the evidence clearly disclosed that [Calhoun] was a trespasser on the * * * vehicle and the only duty owed him was not to willfully injure him after his presence was known * * *."

The underlying and at least partly unarticulated theory of this argument asks us to begin the reasoning process from the "fact" (which is arguable, but which we will assume) that the defendant's policy expressly forbade its drivers from hiring helpers on their own initiative. If we assume, as defendant asks, that appellee was employed by the driver in defiance of defendant's directive, we are asked to conclude that his presence on or about the truck was without defendant's authority, and his status was no better than that of a trespasser. From this initial conclusion, defendant then inquires as to the standard of duty owed a trespasser, and finds the answer to lie solely in the limited duty of not willfully injuring him. Obviously, argues defendant, the driver did not *willfully* injure the appellee and, therefore, no liability attaches to either master or servant.

But even, defendant states, if a somewhat higher duty

of care was owed to plaintiff than the bare duty of not willfully injuring him, a duty, say, of ordinary care after his presence was known, or after it became known that he was in a condition of immediate peril, the knowledge of the *driver-servant* that the plaintiff was present or in a condition of peril, while sufficient to charge the servant with a duty of ordinary care, could not be imputed to the master because the driver was acting outside the scope of his employment with regard to the entire course of conduct which terminated in Calhoun's being burned.

We are not here required to decide whether defendant has correctly stated the law (in either its above alternative forms) as to the standard of care owed a known or discovered trespasser, since the entire thrust of his argument, as we have articulated it for him, is in our view a continuum devolving upon the point of scope of employment. Further, we note parenthetically that the fellow-servant rule, whatever its present status in Ohio law, has not been injected as an issue in this case. The question before us at this juncture and the question dispositive of defendant's first argument is, therefore, whether the servant was sufficiently within the scope of his employment so as to apply the doctrine of *respondeat superior* regardless of the victim's status, reserving for the moment the problem of the servant's negligence.

Preliminarily, we note that the pertinent law of Ohio leaves open any precise definition of the terms "scope" or "course" of employment, that is: "The expression 'scope of employment' cannot be accurately defined, because it is a question of fact to be determined according to the peculiar facts of each case." *Rogers* v. *Allis-Chalmers Mfg. Co.* (1950), 153 Ohio St. 513, 526. Generally, it is well said that:

" * * * [T]he servant's conduct is within the scope of his employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and *is actuated,* at least in part, *by a purpose to serve the master.*

"The fact that the servant's act is expressly forbid-

den by the master, or is done in a manner which he has prohibited, is to be considered in determining what the servant has been hired to do, but it is usually not conclusive, and does not in itself prevent the act from being within the scope of employment." (Emphasis added.) Prosser, Law of Torts 461 (4th Ed. 1971); James, *Vicarious Liability*, 28 Tulane L. Rev. 161, 174 (1954).

The theory advanced by the defendant seeks to focus on the unauthorized hiring of the victim Calhoun as a dispositive fact insulating Coca-Cola from liability. Yet its own vigorous cross-examination of the victim clearly established both that Calhoun's sole reason for being at the site of the injury was in response to the servant's request, and in furtherance of the master's business. Moreover. the servant was particularly authorized to procure repairs to the truck. Since the entire course of conduct involving Calhoun, inclusive of his employment by the servant and his presence during the aborted repair procedure, was actuated by a purpose to serve the master, it is plain to us that the driver's conduct was within the scope of his employment. We are thus led to the proposition that the status of an injured third party vis-a-vis the master cannot—as a matter of law—block the application of *respondeat superior* where the act complained of arise: as here, within the scope of the servant's employment.

Support for this rule is found in the case of *The Delivery Co.* v. *Callachan* (1917), 9 Ohio App. 65. There, too a minor had been directly employed as a helper by the master's truck driver for the purpose of assisting the driver in making deliveries. When the boy was injured and *respondeat superior* invoked, the court considered the effect of a command promulgated by the company which expressly instructed its servants "to permit none other than authorized employees to be and remain on the trucks * * * ." *Id.* at 67. Responding to the argument that the victim's status as a trespasser blocked the workings of the doctrine of *respondeat superior*, the court wrote:

"We know of no authority for the doctrine that the promulgation of a rule for the direction and control of em-

ployees will excuse the master for the tort of the servant which results in injury to a third person, relieving the master of responsibility therefor. * * * [T]he authorities are to the contrary." *Id.* at 69.

See also *Maple* v. *Tenn. Gas Transmission Co.* (1963), 30 Ohio Op. 2d 471.

Accordingly, in light of the rule of *Callachan* and the essentially undistinguishable factual conditions and theories of that case and our own, we hold that the doctrine of *respondeat superior* is not made inapplicable as a matter of law turning on the status of the injured third party, so long as the act complained of can be found within the scope of a servant's employment. Defendant's trespasser-status argument in support of the first assignment of error is therefore without merit.

Defendant next urges upon us the argument, still in support of its motion for a directed verdict, that "no act or omission on the part of [the driver] was negligent, nor a direct and proximate cause of the injury." We are required to assume from this omnibus attack that defendant is challenging the presence of all the basic elements of the negligence. viz., that the driver owed no duty to Calhoun, that even if a duty was owed, such duty as may have been owed was not breached, and even if breached, such breach did not proximately cause the injuries.

As to the first of these, it is clear to us that the driver owed Calhoun a duty of reasonable care, viz., to protect him from foreseeable risks. The particular risk in the case at bar was fire. When the driver continued to turn over the engine by activating the ignition switch, knowing that sparking thereby resulted in the presence of open gasoline, he thereby increased the risk, that is, the "posssibilities of danger." *Palsgraf* v. *Long Island R. R. Co.* (1928), 248 N. Y. 339, 162 N. E. 99, 101. This act of increasing or perpetuating the risk was a breach of his duty to any foreseeable third party, including Calhoun, whom he knew to be in the area. *DiGildo* v. *Caponi* (1969), 18 Ohio St. 2d 125, 130: *Mudrich* v *Standard Oil Co.* (1950), 153 Ohio St. 31; *Cole* v. *New York Central Rd. Co.* (1948), 150 Ohio St. 175.

In arguing that any breach of duty by the driver did not directly and proximately cause Calhoun's injuries, defendant is not so much asking us to define proximate cause in its entirety as he is urging us to accept an unfounded assertion supported only by the statement: "He could have sat there all day turning the key and cranking the motor without ever causing this accident." Insofar as we are able to infer a legal issue therefrom, we conclude that there was ample evidence, in the facts as we have recited them, from which a jury could have found both that Calhoun was a person within the risk and that the injuries to him were a result within such risk. See R. Keeton, Legal Cause in the Law of Torts 79 (1963). There is no reason we can apprehend to inject the issue that the mechanic's act of throwing the flaming can constituted an efficient intervening cause, breaking the chain of causation, since the evidence would clearly sustain the jury in finding that the mechanic's act was such as might with reasonable diligence have been foreseen by the driver. *Taylor* v. *Webster* (1967), 12 Ohio St. 2d 53; *Neff Lumber Co.* v. *First National Bank of St. Clairsville* (1930), 122 Ohio St. 302. Since fire was the risk, the method of transmission of the flames onto Calhoun cannot here break the chain of causation; i. e., "one who launches a destructive force is [not] always relieved of liability, if the force, though known to be destructive, pursues an unexpected path." *Palsgraf, supra* at 100. Alternatively, the evidence would similarly sustain a finding by the jury that the driver and mechanic were concurrently negligent. Defendant's second argument in support of his first assignment of error is therefore without merit.

Defendant next argues that Calhoun was contributorily negligent. This argument is wholly without merit since the facts reveal he was not aware of the open sparks and in no position to appreciate the risk. Accordingly, since none of defendant's supporting arguments are meritorious, its first assignment of error is overruled.

Defendant next assigns as error the trial court's charge to the jury, which was as follows: "* * * regardless of plaintiff's status as a trespasser, the defendant owed the

duty of reasonable care." This assignment of error is without merit and overruled in accordance with our holding that the status of an injured third party is not relevant to the doctrine of *respondeat superior*, so long as the injuries complained of arise, as here, within the scope of employment.

Defendant's final assignment of error asserts that the court erred in refusing to reduce the verdict by $10,000 because of a provision in the pre-trial settlement between Calhoun and the mechanic. We have carefully examined the transcripts of the docket, journal entries and proceedings and find no error prejudicial to the appellant therein. Accordingly, this assignment of error is without merit and overruled. The judgment of the Court of Common Pleas of Butler County, is affirmed.

*Judgment affirmed.*

SHANNON, P. J., and WHITESIDE, J., concur.

WHITESIDE, J., of the Tenth Appellate District, sitting by designation in the First Appellate District.