MUMFORD

v.

INTERPLAST, INC., Appellee, et al.; Indiana Insurance Company, Appellant.

[Cite as *Mumford v. Interplast, Inc.* (1997), 119 Ohio App.3d 724.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 1419.

Decided May 23, 1997.

*Nicholas E. Subashi* and *Brian L. Wildermuth,* for appellant Interplast, Inc.

*Edward C. Baran* and *Janet L. Miggins,* for appellant Indiana Insurance Company.

FAIN, Judge.

Third-party defendant-appellant Indiana Insurance Company appeals from a summary judgment rendered in favor of third-party plaintiff-appellee Interplast, Inc. Indiana Insurance contends that the trial court erred in concluding that the insurance company had a duty to defend and indemnify Interplast and its named employees from liability because plaintiff Nicole L. Mumford's complaint arguably or potentially established that the employees committed negligent acts within the scope of their employment.

Contrary to Indiana Insurance's contentions, we conclude that the trial court did not err in determining that Mumford's complaint alleged negligent, rather than intentional, acts by Interplast's employees, which were within the policy coverage. We also conclude, however, that various named employees were not "insureds" as defined by the insurance policy when they acted outside the scope of their employment by allegedly providing Mumford with alcoholic beverages at a cocktail lounge after their work shift had ended. With respect to one employee, defendant Michael McQuinn, the trial court properly found that he was arguably or potentially within the policy coverage when he allegedly performed acts after working hours to protect Interplast's property or further Interplast's business policies. Accordingly, the summary judgment of the trial court is affirmed in part and reversed in part, as more fully explained in Part IV of this opinion.

I

On September 1, 1995, plaintiff Nicole L. Mumford filed her complaint naming, among others, her employer, Interplast, Inc., and co-workers Michael McQuinn, Linda Holden, Robert Dalton, Lisa Blocher, and Jeff Stump as defendants. In Count One of her complaint, Mumford alleged that on September 1, 1994, she and McQuinn, Holden, Dalton, Blocher, and Stump went to a cocktail lounge known as My Brother's Place after working the second shift at Interplast. Mumford claimed that while at the lounge, her co-workers purchased liquor and beer for her, even though she was only nineteen years old, with a credit card owned by Interplast. In Count Two of her complaint, Mumford alleged that she and

Holden, McQuinn, and Dalton left the cocktail lounge at around 2:00 a.m. and went to the Greenville Inn. There, according to Mumford, McQuinn attempted to engage in nonconsensual sexual contact with her and restrained her freedom of movement. In Count Three of her complaint, Mumford claimed that McQuinn transported her from the Greenville Inn to her car, which was parked in the company parking lot at Interplast. Mumford alleged that McQuinn, while acting within the scope of his employment, instructed and required her to remove her car from the company parking lot even though he knew or should have known that she was intoxicated. While driving her automobile down State Route 49, Mumford lost control of her vehicle and struck a utility pole, thereby sustaining injuries.

On April 26, 1996, Interplast filed a third-party complaint naming appellant Indiana Insurance Company as third-party defendant. In its complaint, Interplast alleged that Indiana Insurance had refused to defend Interplast and its employees from Mumford's claims even though it had previously agreed to provide a defense for and provide indemnification from such claims pursuant to a comprehensive business insurance policy. Interplast sought a declaratory judgment stating that Indiana Insurance had a duty to defend and indemnify Interplast and its employees from Mumford's claims. In response to Interplast's third-party complaint, Indiana Insurance filed an answer and counterclaim requesting a declaratory judgment setting forth the respective rights and obligations of the parties.

Interplast filed a motion for summary judgment against Indiana Insurance claiming that the comprehensive business policy covered all negligent acts of employees occurring within the scope and course of employment and that Mumford's complaint arguably or potentially raised such claims. Indiana Insurance filed its response to Interplast's motion and its own motion for summary judgment against Interplast. In its motion, Indiana Insurance claimed that the allegations in Mumford's complaint indicated that the alleged acts took place outside the course of employment and were intentional acts rather than negligent acts, thus falling outside the scope of coverage provided by the comprehensive business policy.

The trial court granted Interplast's motion for summary judgment. The trial court found that Mumford's complaint, on its face, alleged various negligent acts by Interplast employees that took place within the scope of their employment and that Indiana Insurance's policy covered such acts. Accordingly, the trial court entered summary judgment in favor of Interplast and against Indiana Insurance.

From the summary judgment of the trial court, Indiana Insurance appeals.

## II

Indiana Insurance's first assignment of error[1] is as follows:

"The trial court erred as a matter of law, to the prejudice of the appellants, in finding that the insurer had a duty to defend the insured because the complaint stated a claim arguably sounding in negligence but where the underlying acts were either intentional and/or criminal acts not covered by the general liability policy."

Indiana Insurance claims that the acts alleged in Mumford's complaint were intentional torts that fell outside of the scope of coverage provided by the comprehensive business policy. Indiana Insurance contends that Mumford's allegations established that her co-employees intentionally provided her with alcohol and that McQuinn intentionally attempted nonconsensual sexual contact with her and, later, intentionally ordered her to drive her vehicle away from the company parking lot. According to Indiana Insurance, these intentional acts were not covered by its policy, which insures Interplast and its employees for "accidents," but not acts intended by the insured. Accordingly, Indiana Insurance maintains that it has neither the duty to defend nor the duty to indemnify Interplast and its employees from Mumford's claims.

Pursuant to Civ.R. 56(C), summary judgment is proper where the trial court determines that "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appear from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; *Shaw v. J. Pollock & Co.* (1992), 82 Ohio App.3d 656, 659, 612 N.E.2d 1295, 1297–1298.

In the case before us, the issue is whether the complaint filed by Mumford alleged sufficient facts and circumstances to require Indiana Insurance to defend and to indemnify Interplast and its employees from liability.[2] This issue has been addressed by the Supreme Court of Ohio in *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 180, 9 OBR 463, 465–466, 459 N.E.2d 555, 558, where the court held as follows:

---

1. Indiana Insurance set forth two assignments of error in its appellate brief; however Interplast, McQuinn, and Dalton addressed four assignments of error in their briefs. Pursuant to App.R. 12 and App.R. 16, we only recognize the assignments of error promulgated by the appellant.

2. In so deciding, we need not address the merits of Mumford's claims against the various defendants, and nothing stated in this opinion should be interpreted as doing so.

"[W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."

The basis for this rule is that since the advent of notice pleading as promulgated by the Ohio Rules of Civil Procedure, formal pleading requirements have been abandoned so that a complaint no longer needs to set forth specific factual allegations, and a trial is no longer limited to the issues raised in the pleadings. *Id.* at 179–180, 9 OBR at 464–466, 459 N.E.2d at 557–558; see Civ.R. 8; Civ.R. 15(B). Thus, the liberal nature of the Civil Rules gives rise to the possibility that the insurer's duty to defend could attach at some later stage of the action, after the plaintiff has already filed the complaint. *Id.* at 180, 9 OBR at 465–466, 459 N.E.2d at 558; *Great Am. Ins. Co. v. Hartford Ins. Co.* (1993), 85 Ohio App.3d 815, 818, 621 N.E.2d 796, 798–799. Accordingly, we must examine the allegations contained in Mumford's complaint to determine whether they state a claim that is potentially or arguably within the coverage of the comprehensive business policy.

Before doing so, we will first examine the scope of coverage provided by Indiana Insurance's policy. In its Commercial General Liability Coverage Form, Indiana Insurance agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the policy] applies." An "insured" includes the corporation designated in the declarations and its employees, but only for acts within the scope of their employment. The policy also contains the following provision:

"b. This insurance applies to 'bodily injury' and 'property damage' only if:

"(1) The 'bodily injury' or 'property damage' is caused by 'an occurrence' that takes place in the 'coverage territory;' and

"(2) The 'bodily injury' or 'property damage' occurs during the policy period."

The policy defines an "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Further, under the section entitled "Exclusions," the policy states as follows:

"This insurance does not apply to:

"a. 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property."

In Count One of her complaint, Mumford alleges that McQuinn, Dalton, Holden, Blocher, and Stump, all co-employees, went with her to a cocktail lounge after their second shift at Interplast. Mumford claims that her co-employees

purchased intoxicating beverages for her with an Interplast company credit card, even though she was under the age of twenty-one. In two pertinent paragraphs, Mumford makes the following allegations:

"10. That the actions of the Defendants set forth above pertaining to the careless, negligent and/or intentional furnishing, purchasing, and/or selling of intoxicating liquors and beer to Plaintiff were done so with the knowledge, or with reasonable exercise of care the Defendants should have known, that Plaintiff would become intoxicated therefrom.

"* * *

"12. That thereafter on or about September 1, 1994, at approximately 3:00 o'clock A.M., Plaintiff, after having consumed intoxicating liquor and beer which had been sold, given, or furnished to her by the Defendants set forth above, did, while under the influence of such intoxicating [liquor] and beer, attempt to operate a certain 1982 Pontiac Bonneville motor vehicle owned by her, but was unable to successfully do so resulting in her losing control of said vehicle and striking a utility pole on State Route 49 South in Neave Township, Darke County, Ohio."

Mumford also alleges that as a proximate result of the accident, she suffered various physical injuries, extreme pain and mental anguish, lost wages, and damage to her automobile.

In Count Two of her complaint, Mumford claims that after leaving the cocktail lounge with McQuinn, Holden, and Dalton, she went with them to the Greenville Inn, where McQuinn locked her in a room and proceeded to attempt to engage in "nonconsensual sexual contact" with her. As a result of McQuinn's actions, Mumford claims that she was deprived of her freedom of movement, and she seeks punitive damages for his willful and malicious behavior.

In Count Three of her complaint, Mumford claims that after leaving the Greenville Inn, McQuinn drove her to the Interplast company parking lot where her car was parked. Mumford then makes the following allegations:

"27. That the Defendant, Michael McQuinn, while acting within the scope and course of his employment with Defendant, Interplast, Inc., instructed and required Plaintiff to remove her automobile from said company's parking lot.

"28. That the Defendant, Michael McQuinn, while acting within the scope and course of his employment for Interplast, Inc., knew, or should have known, that the Plaintiff's ability to drive her automobile was substantially impaired due to the intoxicating liquors and beer served to her by the Defendants as set forth above.

"29. That as a direct and proximate result of having been required to remove her automobile from the company parking lot of Defendant, Interplast, Inc., Plaintiff attempted to drive her automobile but was unable to successfully do so resulting in the aforementioned accident and damages as set forth above."

Indiana Insurance suggests that these claims allege intentional acts on the part of Interplast employees leading to Mumford's automobile accident and, consequently, her personal injuries. Indiana Insurance contends that these acts fall within the insurance policy's exception for bodily injury intended or expected by the insured. Also, Indiana Insurance claims that the definition of an "occurrence"—as an accident—does not include these intentional acts and precludes coverage for liability arising from Mumford's complaint. With respect to Counts One and Three of Mumford's complaint, we disagree.[3]

■ Contrary to Indiana Insurance's interpretation of the allegations in Mumford's complaint, Counts One and Three set forth claims that are not excluded by the insurance policy because, based solely upon the pleading itself, the injury suffered by Mumford was not intended or expected by her co-workers. The Supreme Court of Ohio definitively addressed this matter when it held that "[i]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended." *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, syllabus. In Count One, Mumford alleges that her co-workers negligently provided her with alcohol, which she consumed, and her resulting intoxication ultimately caused her automobile accident. The fact that her co-workers intended or expected Mumford to consume alcohol does not mean that they expected or intended for her to injure herself in an automobile accident. In Count Three, Mumford alleges that McQuinn was negligent in ordering her to drive her car from the Interplast company parking lot when he should have known that she was intoxicated. There is no suggestion that McQuinn intended or expected Mumford to injure herself in an automobile accident. Thus, Mumford does not allege in Counts One and Three of her complaint intentional acts on the part of Interplast's employees.

■ With respect to the definition of an "occurrence," we find that Mumford's automobile accident satisfies the term "accident" as it appears in the insurance policy. We find that by defining an "occurrence" as an "accident," Indiana Insurance excluded only intentional or expected acts from coverage. Cf.

---

3. The parties stipulate that Count Two of Mumford's complaint, McQuinn's alleged attempt at nonconsensual sexual contact with Mumford, alleges acts in which the actor intended or expected to produce the injuries suffered. Accordingly, Indiana Insurance does not have a contractual obligation to defend or indemnify McQuinn or Interplast from liability arising from the allegations set forth in Count Two of Mumford's complaint.

*Willoughby Hills,* 9 Ohio St.3d at 180–181, 9 OBR at 466, 459 N.E.2d at 558 ("The allegations of negligence asserted by Macko et al., as a result, fall within the definition of 'occurrence' as set forth in the policy since only intentional and expected injuries are excluded."). Accordingly, liability arising from the allegations set forth in Counts One and Three of Mumford's complaint is not outside the scope of coverage based on the exclusion for expected or intended acts.

Indiana Insurance's first assignment of error is overruled.

### III

Indiana Insurance's second assignment of error is as follows:

"The trial court erred as a matter of law to the prejudice of appellant by finding the underlying acts 'negligent within the course and scope of employment' and that a defense was owed under a general liability policy where such policy had an exclusion for bodily injury to a co–employee."

Indiana Insurance makes a three-fold argument. First, it contends that the allegations contained in Mumford's complaint establish that McQuinn, Dalton, Holden, Blocher, and Stump acted outside the scope of their employment so that they were not an "insured" under the express terms of the insurance policy. Alternatively, Indiana Insurance claims that even if the named Interplast employees were acting within the scope of their employment, the insurance policy expressly precludes coverage for "bodily injury" to an employee that arises out of that employee's course of employment. Indiana Insurance also claims that the policy does not include in its definition of an "insured" any Interplast employee who inflicts injury on a co-employee while in the course of his or her employment.

The first issue before us is whether the allegations set forth in Counts One and Three establish acts by Interplast employees that were potentially or arguably within the scope of their employment. See *Willoughby Hills,* 9 Ohio St.3d at 180, 9 OBR at 465–466, 459 N.E.2d at 558. In Count One, Mumford claims that McQuinn, Dalton, Holden, Blocher, and Stump purchased and supplied her with alcoholic beverages, paid for with an Interplast company credit card, which ultimately led to her intoxication and was a contributing cause of her automobile accident. Although the term "scope of employment" as used in the comprehensive business policy is not defined therein, we will assign a plain meaning to the words. See *Werner v. Cincinnati Ins. Co.* (1991), 77 Ohio App.3d 232, 235, 601 N.E.2d 573, 575 ("When there is no ambiguity in the language of a contract, it is not the court's place to interpret the words beyond their plain meaning.").

As a threshold matter, "[t]he expression 'scope of employment' cannot be accurately defined, because it is a question of fact to be determined according

to the peculiar facts of each case." *Tarlecka v. Morgan* (1932), 125 Ohio St. 319, 181 N.E. 450, paragraph four of the syllabus; *Calhoun v. Middletown Coca–Cola Bottling Co.* (1974), 43 Ohio App.2d 10, 13, 72 O.O.2d 158, 160, 332 N.E.2d 73, 76. Generally, "[c]onduct is within the scope of employment if it is initiated, in part, to further or promote the master's business." *Martin v. Cent. Ohio Transit Auth.* (1990), 70 Ohio App.3d 83, 92, 590 N.E.2d 411, 417. Ordinarily, an act committed by an employee when he is off duty is not within the scope of employment. *Biddle v. New York Cent. Rd. Co.* (1930), 43 Ohio App. 6, 8–9, 182 N.E. 601, 601–602; *Knecht v. Vandalia Med. Ctr., Inc.* (1984), 14 Ohio App.3d 129, 132, 14 OBR 145, 147–148, 470 N.E.2d 230, 233. An exception to this rule is where the employee has a duty to perform in furtherance of the master's business after working hours and performs that duty, causing injury to a third party. *Biddle,* 43 Ohio App. at 8–9, 182 N.E. at 601–602. Still, an employee is acting. outside the scope of employment where the act has no relationship to the employer's business or is so divergent that its very character severs the employer-employee relationship. *Thomas v. Ohio Dept. of Rehab. & Corr.* (1988), 48 Ohio App.3d 86, 89, 548 N.E.2d 991, 994.

In the case before us, Mumford alleges in Count One of her complaint that she and McQuinn, Dalton, Holden, Blocher, and Stump met at a cocktail lounge after their second shift at Interplast and consumed alcoholic beverages. Although Mumford claims that the alcoholic beverages were paid for with a company credit card, allegedly with the company's "knowledge and consent," this alone does not transform an after-work social event into acts performed in furtherance of the employer's business. On the face of the complaint, Mumford, McQuinn, Dalton, Holden, Blocher, and Stump were engaged in a purely social function with no stated business purpose or design. The fact that the alcoholic beverages were paid for with a company credit card does not, by itself, alter the nature of the activity, even where the company consents to the use of its credit card to pay for the activity. In sum, the allegations set forth in Count One of Mumford's complaint do not arguably or potentially establish acts that were within the scope of Interplast's employment of McQuinn, Dalton, Holden, Blocher, and Stump. Thus, the named employees were not an "insured" as defined by the comprehensive business policy, and Indiana Insurance has no duty to defend or indemnify them for liability arising from Count One of Mumford's complaint.

With respect to Interplast, Mumford alleges in Count One that the company is individually liable for consenting to the purchase of alcohol for her with a company credit card. Unlike its employees, Interplast is an "insured," as defined by the comprehensive business policy, without qualification. The question then arises as to whether Interplast's alleged acts are sufficient to establish

Indiana Insurance's duty to defend and to indemnify the company from liability arising from Count One of Mumford's complaint.

■ The Supreme Court of Ohio has held that "where the insurer does not agree to defend groundless, false or fraudulent claims, an insurer's duty to defend does not depend solely on the allegations of the underlying tort complaint." *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 114, 30 OBR 424, 430, 507 N.E.2d 1118, 1124. Rather, the insurer may prove the "true facts" in a declaratory action to establish its rights and obligations under the policy. *Id.* Indiana Insurance has requested such declaratory relief in this action, and its policy does not agree to defend Interplast from groundless, false, or fraudulent claims. However, rather than establish "true facts" independent of Mumford's complaint, Indiana Insurance has argued that the allegations in the complaint itself do not establish its duty to defend and to indemnify Interplast. Although the allegations set forth in Count One of Mumford's complaint are tenuous with respect to Interplast's legal liability, we are reluctant to absolve Indiana Insurance of its duty to defend an insured unless the allegations are groundless, false, or fraudulent beyond question. Cf. *id.* at 115, 30 OBR at 430, 507 N.E.2d at 1124–1125 (finding that the insurance company "established beyond dispute" that the insured's acts were intentional and that the plaintiff's claims of negligence were groundless). Instead, we shall require Indiana Insurance to honor its policy and to defend Interplast from the allegations and prayer for relief set forth under Count One of Mumford's complaint. Given the apparent absence of any basis, in Count One of the complaint, for holding Interplast vicariously liable for the acts of its employees acting outside the scope of their employment, it may be that Indiana Insurance can satisfy its duty to defend Interplast by means of a motion to dismiss Count One of the complaint, as against Interplast, for failure to state a claim upon which relief can be granted. Even a motion to dismiss pursuant to Civ.R. 12(B)(6) is a significant legal undertaking that must be done competently and carefully if it is likely to succeed. The preparation, filing, and effective prosecution of a motion to dismiss is well within the reasonable expectations of an insured who relies upon the insurer's duty to defend the insured, as set forth in the policy of insurance for which the insured has paid a substantial premium.

■ In Count Three of her complaint, Mumford claims that McQuinn, while in the scope of his employment, ordered her to drive her car from the Interplast company parking lot even though he should have known that she was intoxicated at that time. Generally, we do not necessarily find the plaintiff's allegation as to a factual conclusion wholly dispositive to the issue of coverage where other facts alleged in the complaint contradict that conclusion. In this case, however, the possibility exists that McQuinn had a duty to protect company property or otherwise enforce Interplast's policies even after working hours. As we discussed earlier, acts performed after working hours and in furtherance of the

employer's business may fall within the scope of employment. See *Biddle,* 43 Ohio App. at 8–9, 182 N.E. at 601–602. Thus, based on the allegations set forth in Count Three of Mumford's complaint, McQuinn's alleged acts potentially or arguably fall within the scope of his employment with Interplast.

 Indiana Insurance claims that the insurance policy explicitly denies coverage for any employee who causes bodily injury to a co-employee while in the course of his or her employment and that McQuinn was not an "insured" based on the allegations set forth in Count Three of Mumford's complaint. The appellees, however, correctly point out that Indiana Insurance failed to raise this issue in the lower court. The trial court did not have the opportunity to address the issue, and we will not address it for the first time on appeal. *State v. Peagler* (1996), 76 Ohio St.3d 496, 499, 668 N.E.2d 489, 492 ("Generally, an appellate court will not consider any error that counsel could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.") We reject Indiana Insurance's suggestion that it raised the issue in the lower court by filing a copy of the insurance policy and a relevant letter as a part of the record. The issue was not raised in response to Interplast's motion for summary judgment or as part of Indiana Insurance's motion for summary judgment. The mere inclusion of documents in the record does not effectively raise every conceivable argument arising or inferable from that document; instead, the parties have an affirmative duty to make an argument in the lower court before assigning an error based on that argument. See App.R. 12(A)(2).

With respect to Indiana Insurance's argument that the policy does not cover liability arising from injuries to an employee sustained during the course of employment, we find that Indiana Insurance sufficiently raised this argument in its motion for summary judgment and preserved the issue for our review.

 Indiana Insurance claims that section 1, subsection 2.e.(1), precludes coverage for liability arising from injuries to an employee arising out of the course of employment by the insured. The relevant provision states as follows:

"This insurance does not apply to:

"* * *

"e. 'Bodily injury' to:

"(1) An employee of the insured arising out of and in the course of employment by the insured; or

"(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above."

Contrary to Indiana Insurance's suggestions, the allegations in the complaint do not allege that Mumford was injured in the scope and course of her

employment with Interplast. As we have already discussed, acts committed after working hours are generally outside of the scope of employment. See *Biddle*, 43 Ohio App. at 8–9, 182 N.E. at 601–602; *Knecht*, 14 Ohio App.3d at 132, 14 OBR at 147–148, 470 N.E.2d at 233. There is nothing on the face of the complaint to suggest that Mumford acted within the scope of her employment when she was injured. In fact, Mumford was injured in an automobile accident while driving from Interplast hours after her work shift had ended. Based upon the face of the complaint, Mumford's travel from her place of employment was not related to her employer's business. Cf. *Faber v. Metalweld, Inc.* (1992), 89 Ohio App.3d 794, 797, 627 N.E.2d 642, 643–644 (holding that employer is not vicariously liable for employee's negligence while driving to work where such driving conferred no special benefit upon employer other than to make employee's services available). Accordingly, Mumford was not injured within the course and scope of her employment and the exclusion set forth in section 1, subsection 2.e.(1), does not apply.

Based on the foregoing, Indiana Insurance has a duty to defend and to indemnify the "insured"—McQuinn and his employer, Interplast—from liability arising from the third count of Mumford's complaint and to defend and to indemnify Interplast, alone, from liability arising from the first count of Mumford's complaint. This duty exists until the factual record establishes that McQuinn and Interplast are no longer arguably or potentially within the policy coverage. With respect to Holden, Dalton, Blocher, and Stump, Indiana Insurance has no duty to defend or to indemnify them from liability based upon the allegations set forth in Mumford's complaint.

Indiana Insurance's second assignment of error is sustained in part.

## IV

Indiana Insurance's first assignment of error having been overruled and its second assignment of error having been sustained in part, the summary judgment of the trial court is affirmed in part and reversed in part. Specifically, the judgment is reversed as it pertains to the first count of the complaint, with respect to which we hold that Indiana Insurance has no duty to defend Holden, Dalton, Blocher, and Stump. It is affirmed as it pertains to the third count of the complaint, with respect to which we agree with the trial court that Indiana Insurance has a duty to defend McQuinn and Interplast, Inc., and also as it pertains to the duty of Indiana Insurance to defend Interplast, Inc., with respect to the liability asserted against it in the first count of the complaint.

*Judgment accordingly.*

BROGAN and WOLFF, JJ., concur.