OPINION
Appellant, Sheila Colwell, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor daughter, Chrisalyn Griffin, to the Butler County Children Services Board ("BCCSB").
Appellant has a long history of abuse and mental illness, and BCCSB's involvement with her dates back to 1986. When appellant was a child, she was sexually abused by her mother, Lettie Haguewood, and appellant's stepfather, Ronald Wyatt. Appellant was subsequently adjudicated an abused child. Haguewood and Wyatt have both served terms of imprisonment for sexual offenses concerning appellant or other children. Appellant was also sexually abused by other of Haguewood's paramours and husbands. When appellant was twenty-five, she became pregnant with Chrisalyn. Wyatt is Chrisalyn's father.
Chrisalyn was born on February 20, 1996. In January 1997, BCCSB received a referral that appellant dropped Chrisalyn in a car seat, causing bruises on Chrisalyn's back. It was also alleged that appellant had thrown a book at Wyatt, but she missed and instead hit Chrisalyn. Appellant was further alleged to have been hitchhiking at night with Chrisalyn after being evicted from a Greyhound bus in Kentucky. There were suggestions that appellant intended to marry Wyatt.
On January 19, 1997, appellant was admitted to the psychiatric unit at Fort Hamilton-Hughes Hospital. Appellant had a nervous breakdown because she failed to take medications for her mental illness. Appellant suffers from a bipolar disorder, as well as manic tendencies, psychotic features, decompensation, and polysubstance abuse. Upon her release from the psychiatric unit, appellant was probated to the Lewis Center. When appellant entered the psychiatric unit, she left Chrisalyn in Haguewood's care.
On January 22, 1997, BCCSB filed a complaint alleging that Chrisalyn was a dependent child because appellant could not adequately care for her and had left her with Haguewood. After a shelter care hearing, BCCSB was granted temporary custody of Chrisalyn and appellant was granted regular visitation. On March 17, 1997, the parties agreed that Chrisalyn be adjudicated a dependent child. A case plan was adopted, and appellant's visitation was increased. Chrisalyn was appointed a guardian adlitem and placed with a foster family.
Appellant fulfilled most of the case plan, which included psychiatric services, individual counseling, parenting classes, a Development Living Skills program, substance abuse counseling, and psychological assessments. Appellant stabilized her mental condition through professional assistance, found suitable housing, and independently supported herself.
Even with these successes, social workers at BCCSB felt that appellant did not resolve the most important issues confronting her reunification with Chrisalyn: appellant's long-term mental health and, more important, appellant's poor judgment in leaving Chrisalyn with Haguewood. Also evident was the lack of a bond between appellant and Chrisalyn. Despite the liberal visitation schedule, appellant demonstrated little bonding with Chrisalyn. Appellant also showed an inability to implement the parenting skills she was being taught.
After several reviews, on September 8, 1998, BCCSB filed a motion for permanent custody. On October 19 and 23 and November 6, 1998, the trial court held hearings on the motion. On January 14, 1999, the trial court filed its entry granting BCCSB permanent custody of Chrisalyn. The trial court found that, even with appellant's personal successes, she never established a bond with Chrisalyn, she failed to overcome her willingness to place Chrisalyn with inappropriate caregivers, and her mental illness impeded her ability to provide Chrisalyn with proper or adequate care. The trial court emphasized that Chrisalyn's guardian adlitem recommended giving BCCSB custody of Chrisalyn and that Chrisalyn's foster family was considering adopting her.
Appellant appeals, raising three assignments of error which we address out of order.
Assignment of Error No. 2:
 THE PERMANENT CUSTODY STATUTE IS UNCONSTITUTIONAL IN THAT IT VIOLATES THE EQUAL PROTECTION CLAUSE BECAUSE IT PERMITS THE TERMINATION OF PARENTAL RIGHTS OF AN INDIVIDUAL WITH A MENTAL DISABILITY.
Assignment of Error No. 3:
 THE PERMANENT CUSTODY STATUTE VIOLATES SECTION 504 OF THE REHABILITATION ACT OF 1973 AND TITLE II OF THE AMERICANS WITH DISABILITIES ACT BECAUSE IT DOES NOT MAKE REASONABLE ACCOMMODATIONS FOR AN INDIVIDUAL WITH A MENTAL DISABILITY.
 In her second and third assignments of error, appellant argues that R.C. 2151.414 violates her right to equal protection and conflicts with federal statutes because it allows the child of a disabled person to be taken by the state without accommodations being made to meet the parent's disability. Appellant argues that BCCSB was precluded from gaining permanent custody because it did not accommodate her mental illness.
Appellant did not raise this issue before the trial court. The trial court was not given the opportunity to address the issue, and we will not address it for the first time on appeal.State v. Peagler (1996), 76 Ohio St.3d 496, 499; Mumford v.Interplast Inc. (1997), 119 Ohio App.3d 724, 736. Accordingly, appellant's second and third assignments of error are overruled.
Assignment of Error No. 1:
 THE TRIAL COURT'S FINDING THAT A GRANT OF PERMANENT CUSTODY TO THE CHILDREN SERVICES BOARD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 In her first assignment of error, appellant contends that the trial court's decision was against the manifest weight of the evidence. Appellant argues that her deficiencies in providing care to Chrisalyn or in choosing other caregivers are outweighed by her efforts at reunification. In essence, appellant asserts that the trial court abused its discretion in making its decision.
The juvenile court may grant permanent custody to an agency if the court finds, by clear and convincing evidence, that the best interest of the child warrants a grant of permanent custody, and that the child cannot be placed with either parent within a reasonable time. R.C. 2151.414(B) and (B)(1); In re EgbertChildren (1994), 99 Ohio App.3d 492, 495. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. When the evidence considered pertains to specific statutory findings which the trial court is required to make, the reviewing court must look to see whether the trial court followed the enumerated factors in making its determination, or whether the trial court deviated from the statutory criteria. See In re William S. (1996), 75 Ohio St.3d 95,99.
In determining the best interest of a child, R.C. 2151.414(D) provides that the juvenile court must consider all relevant factors, including but not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child, or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 In addition to determining the children's best interest, the juvenile court must assess whether the child can be placed with either or both of the child's parents within a reasonable time. R.C. 2151.414(B)(1). In making its determination, the court is guided by the factors set forth in R.C. 2151.414(E), including:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 (3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date of the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or mental neglect;
* * *
(12) Any other factor the court considers relevant.
 In making its determination, the trial court must consider all relevant evidence. If the trial court finds that any of the statutory factors are present, the trial court must find that the child cannot or should not be placed with the parent. R.C. 2151.414(E). See, also, In re William S., 75 Ohio St.3d at 98.
In the instant case, the trial court found that clear and convincing evidence demonstrated that Chrisalyn could not be reunited with appellant, despite the best efforts of BCCSB. The trial court found a substantial probability that Chrisalyn would be adopted and that granting permanent custody to BCCSB was in her best interest.
Appellant made substantial efforts in completing the case plan approved by the trial court, but she failed to implement many of the skills taught in parenting and development classes. Appellant's mental illness prevented her from establishing a safe and nurturing environment in which Chrisalyn could be raised, as evinced by the unclean conditions found in her home. Appellant never established a bond with Chrisalyn, even after over one hundred visitation sessions. In fact, Chrisalyn did not want to take part in the visitations, and appellant would ask how much time was left in a visitation.
More importantly, appellant failed to understand the significant risk Haguewood could pose to Chrisalyn's health and safety. Haguewood had sexually abused appellant, and had allowed others to do the same, yet appellant minimized this conduct and stated that she believed Haguewood was not a threat. Psychological evaluations of appellant revealed that appellant was ill-equipped to assume the responsibilities of adulthood and motherhood. Appellant's dependency and poor judgment kept her tied to both Haguewood and Wyatt, who had also abused her.
We find that there was clear and convincing evidence to support granting BCCSB permanent custody of Chrisalyn. Accordingly, appellant's first assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.