OPINION
Plaintiff, Indiana Insurance Company ("Indiana"), issued a commercial general liability insurance policy to Defendants, Alloyd Insulation Co., Inc. and Alloyd Sheet Metal and Insulation Co., Inc. ("Alloyd"), beginning in 1991. Coverage was renewed annually thereafter.
In 1999, an action was commenced against Alloyd and others in the court of common pleas of Delaware County by the Delaware County Library District Board of Trustees. ("Library Board"). The Library Board alleged that a roof on its building that Alloyd had installed was faulty due to defective workmanship, and that the defects resulted in corrosion and other damage to the Library Board's property. The related claims for relief alleged breach of contract and negligence. Alloyd asked Indiana to defend and indemnify it on any liability it might have.
Indiana commenced a declaratory judgment action in the court of common pleas of Montgomery County. Indiana asked the court to determine that its policy imposed no duty on Indiana to defend and indemnify Alloyd on the Library Board's claims of legal liability. Alloyd answered, asking that Indiana's complaint be dismissed.
Indiana moved for summary judgment on its claim. The trial court denied the motion, but in the process suggested that its negative ruling supported a positive inference that Indiana had a duty of coverage. The court also certified its order pursuant to Civ.R. 54(B). Indiana appealed.
 ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN FINDING AN `OCCURRENCE' TOOK PLACE IN A CONSTRUCTION CASE INVOLVING A CLAIM FOR DEFECTIVE WORKMANSHIP SO AS TO INVOKE THE POLICY."
Orders denying motions for summary judgment are ordinarily not final. However, declaratory judgment actions are "special proceedings," and orders entered in those proceedings which affect a substantial right are final. R.C. 2505.02(B)(2). The trial court's order affected a substantial right when it suggested that Indiana has a duty of coverage. The court's subsequent Civ.R. 54(B) certification renders its order appealable.
Alloyd moves to dismiss, arguing that the appeal is moot because the underlying Delaware County action that was filed in 1999 has since been voluntarily dismissed. According to Alloyd, the action was refiled by the Library Board in 2001, and contains additional claims for relief, further demonstrating mootness.
We denied an earlier motion to dismiss that Alloyd had filed on the same grounds, remarking that the similarities which do exist in both actions might create some preclusive effect with respect to facts or issues in the 2001 action. That, of course, refers to the res judicata
doctrine, which bars subsequent actions between the same parties on claims arising from the same transaction or occurrence on which a final judgment was previously rendered. Grava v. Parkman (1995),73 Ohio St.3d 379. The 2001 action, if it does contain new claims, may represent a change in the legal relations of the parties that were fixed by the prior judgment, avoiding a preclusive effect. See 63 Ohio Jurisprudence 3d., Judgments, Section 524. Nevertheless, in the interests of avoiding further litigation on that issue, we will address the question presented.
The policy that Indiana issued to Alloyd contains the following provisions:
"1. Insuring Agreement.
 "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS — COVERAGES A AND B. This insurance applies only to `bodily injury' and `property damage' which occurs during the policy period. The `bodily injury' or `property damage' must be caused by an `occurrence.' The `occurrence' must take place in the `coverage territory.' We will have the right and duty to defend any `suit' seeking those damages. But:
 "(1) The amount we will pay for damages is limited as described in SECTION III — LIMITS OF INSURANCE;
 "(2) We may investigate and settle any claim or `suit' at our discretion; and
 "(3) Our right and duty to defend and when we have used up the applicable limit of insurance in the payment of judgment or settlements under Coverages A or B or medical expenses under Coverage C.
"The policy also contains the following relevant definitions:
"2. DEFINITIONS.
 "9. `Occurrence' means an accident, including continuous exposure, or repeated exposure to substantially the same general harmful conditions.
"* * *
"12. `Property damage' means:
 "a. Physical injury to tangible property, including all resulting loss of use of that property; or
 "b. Loss of use of tangible property this is not physically injured."
The trial court, relying on our decision in Mumford v. Interplast,Inc. (1997), 119 Ohio App.3d 724, held that the damages to its property that the Library Board had alleged were "occurrences" which required coverage by Indiana of any liability that Alloyd may have on the Library Board's related claims for relief.
In Mumford, an insured's employees used their company credit card to buy alcoholic drinks for an underage female and, after sexually abusing her, put her behind the wheel of a car. She lost control of the car and was injured in a resulting collision. She commenced an action against the employees and their employer, which, as it happened, was also insured by Indiana under a commercial general liability policy containing the very same provisions at issue here. As to whether the plaintiff's personal injuries were an "occurrence" that triggered coverage, we held that they were because the automobile collision was clearly an accident.
We believe that Mumford, in spite of the policy similarities, is of limited application here. The automobile collision that resulted in the plaintiff's personal injuries was clearly an "accident". Here, no similar event or condition is involved. Nevertheless, we agree that coverage is required.
Indiana relies on a decision of the First District Court of Appeals inHeile v. Herrmann (1999), 136 Ohio App.3d 351. There, a contractor was sued for defects in a home it had constructed. The contractor was covered by a commercial general liability insurance policy that, as here, applied to accidental occurrences. The First District held that the coverage didn't apply to the claims, which were for the occurrence of mere "business risks" that are a normal consequence of doing business that business management can and should control. The court added that "[t]he policies do not insure the insured's work itself; rather, the policies generally insure consequential risks that stem from the insured's work."Id., at p. 353.
We believe that Heile and its rationale apply here, but to the opposite result. The "policies" to which Heile referred are commercial general liability policies of the kind involved here. The distinction between "business risks" and the consequential risks which such policies cover was made in an article on which Heile relies; Franco, Insurance Coveragefor Faulty Workmanship Claims Under Commercial General LiabilityPolicies (1994), 30 Tort and Ins. L.J. 785, which stated:
 "Insurance coverage is bottomed on the concept of fortuity. Applying this rule in the construction context, truly accidental property damage generally is covered because such claims and risks fit within the statistical abstract. Conversely, faulty workmanship claims generally are not covered, except for their consequential damages, because they are not fortuitous. In short, contractors' "business risks" are not covered by insurance, but derivative damages are. The key issues are whether the contractor controlled the process leading to the damages and whether the damages were anticipated.
 "Coverage analysis largely turns on the damages sought. If the damages are for the insured's own work, there is generally no coverage. If the damages are consequential and derive from the work the insured performed, coverage generally will lie. The underwriting intent is to exclude coverage for the contractor's business risks, but provide coverage for unanticipated consequential damages." Id., at pp. 785-787.
This same distinction was made in Weedo v. Stone-E-Brick (1979),81 N.J. 233, 405 A.2d 708, which held that business risks are those inherent in performing a particular type of work, and the repair or replacement of faulty workmanship is a business expense and not an insurable liability. Therefore, a commercial general liability policy "does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." Id., 81 N.J. at 249,405 A.2d at 796.
Indiana doesn't contend that the consequences of Alloyd's allegedly faulty work aren't an "accident" because they didn't occur suddenly. Indiana, instead, shifts its focus to the alleged faulty work, and claims that any defects in the work Alloyd performed are not covered by Indiana's liability policy because they are risks of a kind covered by an errors or omissions policy, or perhaps a performance bond. We agree that they might be, but the Library Board's claim against Alloyd is for the result of those defects, not the defects themselves. The question is whether those results are an occurrence in the nature of an accident that the policy covers.
Here, the "accident" is the corrosion and other damage to the Library Board's property that were allegedly caused by the work that Alloyd performed, which is also alleged to be faulty. Those consequential damages are an "occurrence" under the terms of the policy because they are "an accident, including continuous exposure, or repeated exposure to substantially the same general harmful conditions." The alleged faulty workmanship is itself not covered. Neither is the related claim for breach of contract.
The trial court was correct when it denied Indiana's motion for summary judgment. Therefore, the assignment of error is overruled.
Though the trial court's order was final and appealable, it failed to grant or deny the declaratory relief that Indiana's complaint sought and which R.C. Chapter 2721 contemplates. Therefore, per App.R. 27, the case will be remanded to the trial court to enter a declaratory judgment consistent with this opinion.
FAIN, J., concurs.